# MOTT *v.* GEORGIA STATE BOARD OF EXAMINERS IN OPTOMETRY *et al.*

1. Section 7 of the act of the General Assembly approved August 7, 1916 (Acts 1916, p. 83), as follows: "The State Board of Examiners in Optometry shall refuse to issue the certificate of registration, provided for in this Act, to any person who shall have been guilty of grossly unprofessional and dishonest conduct," is contrary to art. 1, sec. 1, par. 3, of the constitution of this State (Civil Code, § 6359), which guarantees due process of law, and therefore is void and unenforceable.
2. The provision in the act for an appeal to the superior court after the board has rendered judgment of condemnation is not a compliance with the mandate of the constitution.
3. Where a legislative act provides for times and places for the meetings of a board authorized to perform duties delegated to it, no further notice need be given; but where the act fails to specify any place of meeting, and permits unlimited meetings besides those provided, and requires no hearing, the essentials of the constitutional guarantee of due process of law are not met.
4. It can not be said that the board were in the exercise of a discretion delegated by the General Assembly. Whether one is guilty of "grossly unprofessional and dishonest conduct" is not a matter of discretion. The terms of the act are mandatory, and provide that when guilt is fixed the board "shall" refuse to issue the certificate of registration.
5. The petition set out a cause of action, and it was error to dismiss it on demurrer.

No. 508. APRIL 12, 1918. REHEARING DENIED MAY 17, 1918.

Equitable petition. Before Judge Pendleton. Fulton superior court. June 12, 1917.

*Owens Johnson* and *Thomas B. Felder,* for plaintiff.

*Daley, Chambers & Daley* and *James K. Hines,* for defendants.

GILBERT, J. Pursuant to the act of the General Assembly approved August 7, 1916 (Acts 1916, p. 83), Kennon Mott applied to the Georgia State Board of Examiners in Optometry for registration and certificate covering the practice of optometry. He paid the fee of $10 required by the act; he submitted proof, in form as required by the board, that he was 21 years old, of good moral character, and for at least two years prior to the passage of the act had been continuously engaged in the practice of optometry in this State; and he satisfactorily passed an examination by the board into his proficiency. The board refused to issue the certificate of registration. Mott filed his petition for mandamus and other relief against the board and each of its members, alleging, that their action was unjust, wrongful, arbitrary, oppressive, and

unlawful; that they had refused to give him any hearing or trial as to the grounds upon which their action was based; that he was not allowed to hear any evidence which the board may have heard or considered in the premises; that he had not been confronted with or given an opportunity to examine witnesses testifying against him, or to be in any manner heard in support of his right; and that no just cause for the refusal of the certificate existed. He contends, that the action in refusing the certificate was null and void, because in violation of the due-process clause of the constitution of this State and of the United States; and that section 7 of the legislative act is unconstitutional and void for the reasons, that it arbitrarily deprives him of his right and property in his profession (although he has complied with all requirements for the issuance of certificate), without notice, hearing, or trial, and without due process of law; that while section 7 of the act provides for due notice and hearing before a certificate already issued can be revoked by the board, it denies the same due process to an applicant who may be suspected of unprofessional or dishonest conduct, and is therefore in violation of art. 1, sec. 1, par. 3, of the constitution of this State, and par. 1 of the fourteenth amendment to the constitution of the United States.

The defendants demurred generally, and upon the following grounds: that the legislative act provides for an appeal to the superior court by the applicant for registration, where registration is refused by the board, upon giving bond to secure the costs of such appeal if determined against him, this being the only remedy open to plaintiff, and as his petition does not contain the essentials of an appeal it can not be maintained; that he does not allege that the board had not made investigation into his moral character or professional conduct before refusing certificate of registration, the presumption of law being that it had made such investigation and based its refusal upon the same; that the petition does not allege facts showing that the action of the board was unjust, wrongful, arbitrary, or oppressive; that the discretion of the board in refusing registration will be controlled or abridged only upon showing abuse of such discretion, and the presumption is in favor of the board having acted within such discretion; that the legislative act creates a public-service board whose discretion will be restricted, controlled, or inquired into by the courts only in the

manner prescribed in the act—by appeal to the superior court; that the act seeks to conserve and protect the health and welfare of the people of the State, and is based upon the exercise by the legislature of the police power, and is therefore not violative of any provision of the State and Federal constitutions; and that the exemption of optometrists who are physicians and surgeons is no such discrimination against optometrists who are not physicians and surgeons as to deny to the latter the equal protection of the laws.  The demurrer was sustained and the petition was dismissed.

Following the well-known rule, where petitions are considered with respect to demurrers thereto, the observations and rulings hereinafter stated are of course based upon the assumption that the facts are true as alleged.

1.  Although there are numerous assaults made upon the act of the General Assembly regulating the practice of optometry, we think it necessary to consider only that based upon the ground that the act deprives the petitioner of the due process of law guaranteed him under the constitutions of this State and of the United States.  Whether the act offends either of these constitutions in other respects is not decided, because, under the view we entertain, it is immaterial to the petitioner and can not operate to his injury.

Mott was already engaged in the practice of optometry prior to March 1, 1917; and the portions of the act in question bearing upon his right to be registered and to receive a certificate of registration authorizing him to continue the practice are as follows: Sec. 6 (1) "The applicant shall be registered and given a certificate of registration on passing a satisfactory examination limited to a demonstration of practical work, if he shall present satisfactory proof, on or before March 1, 1917, of being twenty-one years of age, of good moral character, and of having been continuously engaged in the practice of optometry in this State for at least two years prior to the passage of this act.  The fee for registering such applicants shall be $10.00."  Sec. 7.  "The State Board of Examiners in Optometry shall refuse to issue the certificate of registration, provided for in this act, to any person who shall have been guilty of grossly unprofessional and dishonest conduct." Provision is made for an appeal to the superior court whenever the

certificate is refused; and the practice of optometry without a license from the board is made a penal offense.

Mott complied with every requirement provided in sec. 6 (1), just quoted; and the board having withheld his certificate of registration, he made several inquiries of the officers of the board as to their intention in the matter of granting the certificate. After several evasive and unsatisfactory replies the president of the board finally informed him that he had passed a perfectly satisfactory examination. Mott then inquired if the affidavits he had furnished as to his character were in any way insufficient to meet the requirements of the board, and offered to furnish additional evidence as to his moral character; to which the president of the board replied that this would be unnecessary, that Mott had already complied with the requirements of the board. On a later occasion, after another inquiry, the president of the board stated that the board had some offidavits which they were going to consider before they gave him a certificate, and, although requested to do so, the president of the board refused to divulge the names of the affiants or the character of the affidavits, or what they contained. Mott then demanded that he be given an opportunity to be heard in respect to the affidavits or any other matter that the board might consider in connection with his application for certificate of registration, and an opportunity to refute any charge that might be preferred against him; to which request the president of the board replied that the board did not have to do that and would not do it, and that if the certificate was refused and Mott was not satisfied he could appeal to the superior court, but that the board would not give him any trial. At a still later time, not having heard from the board whether his certificate was to be granted or not, Mott again went to the president of the board, asked him why his certificate was being withheld, and was then told that the board had decided not to grant him a certificate. He inquired why he was refused it, and asked if the board did not think he knew enough, after practicing twenty years, to be entitled to a license, to which the president of the board replied, "The board does not question your ability, but we have affidavits complaining of your dealings." Mott demanded to know who made the affidavits, and was given the name of A. P. Dixon of Woodbury, Ga., but the president refused to say whether he had

any other affidavits, or, if so, by whom they were made. Mott asked what the affidavit of Dixon contained, and was informed that Dixon stated that Mott "had made extravagant claims as to his skill." Mott then demanded that an opportunity be given him to meet and refute any charge of improper conduct on his part, and that the board give him a fair trial in respect to the same, stating he was abundantly able to disprove any charge made against his character or conduct in the practice; but he was informed that the board would not give him any trial or hearing, that it was the policy of the board to refuse certificates in every case in which charges or complaints were made against an optometrist, that the law allowed an appeal to the superior court, and that so far as the board was concerned the matter was final.

The refusal of the board to issue a certificate of registration was based upon that part of section 7 of the act already quoted; and this portion of the act is clearly unconstitutional. "When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power." Yick Wo v. Hopkins, 118 U. S. 356-369 (6 Sup. Ct. 1064, 30 L. ed. 220). Under the alleged authority of the act in question the certificate of registration was denied by the board without notice or hearing, and only after repeated inquiries was petitioner able to ascertain what judgment had been passed, and the basis therefor. Although he had complied with every requirement of the law, his certificate was refused on the ground that he had been guilty of "grossly unprofessional and dishonest conduct," in that he had "made extravagant claims as to his skill." Neither the portion of the act quoted above nor any other portion applicable to Mott makes any provision whatever for notice or hearing before condemnation, which is contrary to the rights guaranteed by both the State and Federal constitutions. Civil Code, §§ 6359, 6700. "The fundamental idea in due process of law is that of 'notice' and 'hearing.' It means that the citizen must be afforded notice and hearing before he is condemned. There must be a hearing first, and judgment can be rendered only after trial." Arthur v. State, 146 Ga. 828 (92 S. E. 637). The benefit of notice and a hearing before judgment

is not a matter of grace, but is one of right. *Shippen Lumber Co.* v. *Elliott*, 134 *Ga.* 699, 702 (68 S. E. 509); Security etc. Co. v. Lexington, 203 U. S. 333 (27 Sup. Ct. 87, 51 L. ed. 204). Without notice and opportunity to be heard, there is no jurisdiction to pass judgment. The act contains the following: "Said board shall prescribe such rules, regulations, and by-laws for its own proceedings and government as will carry into effect the provisions of this act;" and it is insisted that this provision will "save the said act from being unconstitutional and void.". The provision is not sufficient to comply with the constitutional requirements. Even if it be conceded that a constitutional act can be passed which requires the board to provide due notice and hearing before judgment, this provision does not in terms make it mandatory upon the board to give due notice and hearing before judgment in the class of cases which includes the petitioner. The petitioner having complied fully with the requirements of the statute, the issue was, in contemplation of law, closed as to him. The action of the board as complained of was in effect the raising of a new issue by them, of which the petitioner had no notice until after judgment.

The provision in the act for an appeal to the superior court after the board has rendered judgment of condemnation is not a compliance with the mandate of the constitution. It is not conceivable that the constitutional guaranty is satisfied when a hearing is provided only after judgment in such a case. To deprive one of the right to practice his profession is to subject him to humiliation, mortification, and injury, which the constitution will not permit except in conformity with the law of the land and on evidence sufficient to authorize such a finding by an impartial tribunal. To say that one may be adjudged guilty of "grossly unprofessional and dishonest conduct," for the reasons stated by the board in this case, is to demonstrate the arbitrary power which the act undertakes to lodge in the State Board of Optometry. The cases of O'Neil v. Northern Colorado Irrigation Co., 242 U. S. 20 (37 Sup. Ct. 7, 61 L. ed. 123), San Diego Land Co. v. National City, 174 U. S. 739 (19 Sup. Ct. 804, 43 L. ed. 1154), and Reetz v. Michigan, 188 U. S. 505 (23 Sup. Ct. 390, 47 L. ed. 563), are not in conflict with the principles just stated. The last case contains a clear intimation in harmony with our ruling. We are

not unmindful of that line of decisions in cases of taxation, but these stand upon a different basis. See *Beckham* v. *Gallemore*, 147 *Ga.* 323 (93 S. E. 886).

3. It is insisted that where the act fixes the time and place for meeting, no further notice is required. The act in question does not conform to this requirement. It does provide that "There shall be at least two regular meetings of the board of examiners held every year on the first Wednesday in January and July," but it also provides for special meetings, without limitation as to time, and does not specify where any of the meetings shall be held. Under the allegations of the petition it appears that the board did hold meetings in more than one city of the State. Under the provisions of the act the board was at liberty to meet at any time and at any place, and to transact its business without any notice whatever to interested parties, and, under the allegations in this petition, the board exercised that unlimited power; and its action, being arbitrary and oppressive, is unconstitutional and void. Yick Wo *v.* Hopkins, supra.

4. The contention that the courts will not interfere with the action of the board because they were in the exercise of a discretion delegated by the General Assembly is untenable. They were not in the exercise of a discretion. The act authorized none. Guilt is not a matter of discretion. To pronounce one guilty of "grossly unprofessional and dishonest conduct" is to adjudicate a fact, and a fact involving moral turpitude. The necessary result thereof is a refusal of the right to practice the profession of optometry. When one's guilt is fixed, the duty of the board is mandatory. The act provides that they "shall" refuse to issue the certificate of registration.

5. The allegations of the petition are sufficient, if established by proof, to entitle the plaintiff to a mandamus requiring the issue of the certificate of registration. The judgment of the trial court dismissing the petition was erroneous and must be vacated. Whether other forms of relief may be had under the petition is not decided, because, in the light of the foregoing rulings, such decision is deemed unnecessary.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent. Atkinson, J., concurs specially.*