(94 South. 94)

## LEHMANN v. STATE BOARD OF PUBLIC ACCOUNTANCY et al. (3 Div. 567.)

(Supreme Court of Alabama. June 29, 1922. Rehearing Denied Oct. 12, 1922.)

1. Licenses ☞38—Licensee cannot enjoy benefits of act regulating practice of public accountancy without bearing burdens imposed.

Acts 1919, p. 124, which confers the right to practice as a public accountant, also provides how it may be taken away, and a licensee may not enjoy the benefits or privileges conferred by the act without also bearing the burdens and inconveniences imposed by it.

2. Statutes ☞121(1)—Section providing for cancellation of licenses issued germane to to title of act to regulate practice of public accountancy.

Section 7 of Acts 1919, p. 124, to regulate practice of public accountancy, providing for the cancellation of licenses when once issued, is germane to the title, and held not invalid under Const. 1901, § 45.

3. Statutes ☞47—Section of act to regulate public accountants held not void for indefiniteness.

Acts 1919, p. 124, § 7, to regulate the practice of public accountancy, providing that the state board of public accountants may revoke any certificate issued under the act or may cancel the registration for any unprofessional conduct of the holder, or for other sufficient cause, is not void for indefiniteness and uncertainty as to grounds or causes justifying revocation or cancellation.

4. Injunction ☞83—License board vested with quasi judicial authority not enjoined from acting within powers in revoking license.

Where Acts 1919, p. 124 et seq., placed discretion in the state board to determine when a license or certificate as a public accountant, once issued, could be revoked or canceled, equity will not enjoin such board from revoking a license because it is apprehended that they may decide erroneously.

5. Constitutional law ☞62—Legislature may delegate certain governmental powers.

The Legislature may delegate to officers, boards, or commissions of its own creation and appointment certain governmental powers for the more efficient administration of law, subject to certain constitutional limitations.

Thomas, J., dissenting.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Bill by J. Harrod Lehmann against the State Board of Public Accountancy and others for injunction. From a decree dissolving temporary injunction and sustaining demurrer to the bill, complainant appeals. Affirmed.

Erle Pettus, of Birmingham, for appellant.

Acts 1919, p. 24, § 7, is unconstitutional and void. Const. 1901, § 45; 169 Ala. 420, 53 South. 1027; 205 Ala. 623, 88 South. 442; Const. 1901, § 13; 204 Ala. 455, 86 South. 28; 255 U. S. 81, 41 Sup. Ct. 301, 302, 65 L. Ed. 516, 14 A. L. R. 1045; 104 Kan. 141, 177 Pac. 360, 2 A. L. R. 880; 92 U. S. 214, 23 L. Ed. 478; 148 Cal. 590, 84 Pac. 39, 3 L. R. A. (N. S.) 896. 113 Am St. Rep. 315, 7 Ann. Cas. 750; 147 Ga. 323; 148 Ga. 55, 95 S. E. 869; 182 N. C. 865, 109 S. E. 789; 92 U. S. 214, 23 L. Ed. 478; 138 Ark. 137, 211 S. W. 375, 5 A. L. R. 90. Legislative power cannot be delegated, except to counties and municipal corporations to a limited extent. 67 Ala. 217; 82 Ala. 242, 2 South. 345; 85 Ala. 144, 4 South. 661; Cooley, Const. Lim. 139; 15 Barb. (N. Y.) 112; 33 Iowa, 133; 101 Ala. 51, 13 South. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98. The act of 1919 is in violation of the Fourteenth Amendment to the Constitution of the United States. 22 R. I. 539, 48 Atl. 802; 57 Colo. 74, 141 Pac. 132, 51 L. R. A. (N. S.) 958, Ann. Cas. 1915D, 1188; 115 Md. 317, 80 Atl. 1026, 36 L. R. A. (N. S.) 344, Ann. Cas. 1913A, 1247. Injunction is the proper remedy. 174 Pa. 482, 34 Atl. 193; 105 Ky. 387, 49 S. W. 38.

James J. Mayfield, of Montgomery, for appellees.

The Legislature may delegate governmental powers to officers, boards, or commissions of its own creation. 204 Ala. 455, 86 South. 28; 188 U. S. 505, 23 Sup. Ct. 390, 47 L. Ed. 563. Courts of equity do not interfere by injunction for the purpose of controlling the action of public officers constituting inferior quasi judicial tribunals. 2 High on Inj. 1324, 1344.

PER CURIAM. Appellant is a certified public accountant by virtue of an act of the Legislature approved February 17, 1919 (Gen. Acts 1919, p. 124 et seq.). He seeks to enjoin the appellee board from hearing charges preferred against him by other public accountants, and to prevent appellee from revoking or canceling his certificate as a certified public accountant, or from revoking and canceling the registration of such certificate. The bill also seeks to enjoin two other accountants, J. A. Kastner and Francis B. Latady, from preferring or prosecuting charges against the appellant as a certified public accountant. On the filing of the bill the trial court issued a temporary injunction. The respondents filed demurrers to the bill for want of equity and a motion to dissolve the temporary injunction, and from decree sustaining the demurrer and dissolving the temporary writ the complainant prosecutes this appeal.

[1] The sole equitable relief sought is injunction. The only personal or property right with which the complainant claims the respondents are attempting to interfere is the statutory right conferred upon him by the respondent board, acting under and by virtue of the act of the Legislature above referred to. The statute which confers this right upon the complainant also provides how it may be taken away. No constitutional, natural, or inalienable right of the complainant is threatened to be interfered with. If the Legislature had the power to confer this right upon the complainant, it had the right and power to take it away, or to prescribe the terms and conditions upon which it may be forfeited.

A court of equity will not allow the complainant to enjoy the benefits or privileges conferred by that statute without also bearing the burdens and inconveniences imposed by it. Appellant's contention overlooks the fact that the sole wrong of which he complains is a threatened disturbance of a right or privilege conferred by statute.

[2, 3] The main contention of appellant is that section 7 of the act in question is unconstitutional and void: First, because it offends against section 45 of the Constitution, in that the provisions of section 7 are not germane to the title of the bill; and, second, that it is void for indefiniteness and uncertainty as to the grounds or causes which will justify the revocation or cancellation of certificates or licenses issued under or by virtue of the act. There is no merit in either of these contentions, as Justice THOMAS, in his dissenting opinion, has aptly pointed out.

If it could be conceded, however, that section 7 of the act, providing for revocation or cancellation of the certificates when once issued, is void, because of indefiniteness and uncertainty as to its provisions, then the whole act, of course, would fall, because the court could not say that the Legislature would have passed the bill without some provision for revoking or canceling a certificate when once issued. The title of the act was to regulate the practice of public accountancy by creating a state board of public accountancy. Very clearly the practice of public accountancy cannot be properly regulated without some provisions for revoking or canceling a license or certificate when once issued. We are not willing to hold that the Legislature would have provided for issuing a certificate or license to practice public accountancy with no provision whatever for revoking, canceling, or terminating such license or certificate; and, if section 7 should be held to be void, then there would be no authority to revoke or cancel the certificate when once issued.

We do not understand that Mr. Justice THOMAS, in his dissenting opinion, differs from the majority in this holding, but that he concurs to this extent. So, if the act in question be unconstitutional, then the certificate which appellant holds and seeks to protect is absolutely void, and his right thereto is worthless; and the board, having issued a void certificate, would very clearly

have a right to cancel or revoke it. If the act in question be void, as contended by appellant, then, of course, there is no equity in the bill.

[4] However, if the act in question be valid, still the bill is without equity, since neither the trial court nor this court can know in advance of the hearing of the charge preferred that the board will revoke or cancel appellant's certificate or license. The statements in the allegations and prayer of the bill that the board will revoke or cancel the certificate unless enjoined or restrained by the court is of necessity not only a mere conclusion, but an unwarranted apprehension of the pleader. So far as the courts can know from the allegations of the bill, the board may decline to revoke or cancel appellant's certificate, and may allow him to continue to practice his profession thereunder. Hence there is no equity in the bill, for the reason that a court of equity will not enjoin a board or commission vested with quasi judicial and administrative authority from acting as to matters within their jurisdiction and power merely because it is apprehended that they may decide erroneously. This is not a bill to restore to complainant his right to a certificate or license of which he has been unlawfully deprived, nor to compel the issuance to him of a license or certificate to which he is entitled, but it is, essentially, a bill to prevent the hearing of charges preferred against complainant.

The rights of complainant in this case are unlike the rights of a physician, surgeon, dentist, lawyer, or school-teacher to practice their callings or professions. Under the law, they cannot practice without a certificate or license; and, when their license or certificate is revoked, they are thereby prevented from practicing their profession at all. In the case of accountants, however, this is not true. They are not required to obtain a certificate or license to practice their calling, but obtaining the license or certificate is purely voluntary on their part. Nor does the revocation or cancellation of the license or certificate, when once issued, bar or deprive them from further or longer practicing their chosen calling. The license in their case is but a certificate of the board issuing it as to their competency and fitness. It is not at all a requisite to the practice of their calling, though it may be true, and doubtless is, that the certificate of license, being an authoritative recommendation or certification of a legally constituted board as to efficiency and qualifications, has some value. The qualifications an applicant should have in order to entitle him to hold a certificate and to the registration of that certificate as a certified public accountant the law has wisely left to the judgment of a board of experienced accountants. Likewise, in a large measure, the law has placed the discretion in the same experienced accountants who constitute the

board to determine when a license or certificate once issued can be revoked or canceled. The law, however, does contain the necessary provision that no license or certificate shall be revoked or canceled unless written notice shall have been mailed to the holder thereof 20 days before any hearing thereon, stating the cause for such contemplated action, and appointing a day for a full hearing thereon by the board.

The bill in this case shows that the statutory notice was given and that the hearing was continued so as to give the complainant further time to prepare for his defense. But, instead of appearing and defending, he seeks to have a court of equity enjoin the board from doing what the law has authorized it to do. Hence there can be no equity in such a bill, and none of the authorities relied upon by appellant or cited by Mr. Justice THOMAS in his dissenting opinion can be properly considered as authority to the contrary.

[5] The Legislature has the undoubted power to delegate to officers, boards, or commissioners of its own creation and appointment certain governmental powers for the more efficient administration of the law, subject, however, to certain limitations of the Constitution. Parke v. Bradley, 204 Ala. 455, 86 South. 28; Railroad Commission v. A. N. Railway Co., 182 Ala. 357, 62 South. 749.

Courts of equity rarely interfere by injunction with proceedings and determinations of inferior boards, commissions, or tribunals which are clothed by the Legislature with special governmental powers, though such powers be quasi judicial as well as administrative. While there are some cases in which courts of equity will grant injunctive relief against such proceedings, the instances are rare; and this is not one of these exceptional cases. Ewing v. St. Louis, 5 Wall. 413, 18 L. Ed. 657; Reetz v. Michigan, 188 U. S. 505, 23 Sup. Ct. 390, 47 L. Ed. 563.

It is held by the Supreme Court of the United States that in creating such boards state Legislatures do not exercise or confer powers not authorized by the Constitutions, state or federal.

Mr. High, in his valuable work on Injunctions, has thus stated the law on the subject:

"It is important to observe that courts of equity do not interfere by injunction for the purpose of controlling the action of public officers constituting inferior quasi judicial tribunals, such as boards of supervision, commissioners of highways, and the like, on matters properly pertaining to their jurisdiction, nor will they review and correct errors in the proceedings of such officers; the proper remedy, if any, being at law, by writ of certiorari." High on Injunctions, p. 1324, § 1311.

It is neither necessary nor proper for this court to now decide what remedy, if any, would be available to the appellant if his certificate or license should be improperly

or illegally revoked or canceled. The only question now before the court is whether or not the bill contains equity, and we are of the opinion that the trial court ruled correctly in holding that it contained no equity, and in dissolving the temporary injunction or restraining order.

We do not mean to intimate from what is said above that the complainant has any remedy or that any legal right of his has been interfered with, or attempted to be intefered with. We merely decide that there is no equity in the bill, that the decree of the lower court is correct, and it is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, SAYRE, SOMERVILLE, GARDNER, and MILLER, JJ., concur.

THOMAS, J. (dissenting). The relief sought by the bill was injunctive, to prevent the state board of public accountancy from revoking or canceling registration of complainant's certificate as a certified public accountant, under provisions of section 7 of the act approved February 17, 1919 (Acts, p. 126), on the ground that the provision was unconstitutional. If section 7 of the act be offensive to organic law, the whole statute is defective, since it cannot be said that the Legislature would have so enacted without the power to revoke a certificate issued, for just cause.

Respondents moved to dissolve and discharge the restraining order on the ground that "there is no equity in the bill"; and the demurrer to the bill, aside from this general ground, rested on grounds that respondents are officers or agents of the state and are sought to be enjoined from exercising a "discretion which the laws of the state of Alabama have vested in them."

Those who are eligible under the act for a certificate and are styled certified public accountants are: (1) "Any citizen of the United States, residing or having a place for the regular transaction of business in" this state, "being over the age of twenty-one years, of good moral character, and who" has passed the required examination and "shall have received from the state board of public accountancy a certificate of his qualifications to practice as an expert public accountant," etc. (section 1); (2) those who hold certificates as public accountants certified as issued under the laws of another state that grant a similar privilege to the certified public accountants of this state, and who are in the "discretion" of the Alabama state board of public accountancy entitled and are authorized to have their certificates registered, etc. (sections 3–5); (3) those having qualifications prescribed in section 1 of the act and exempt from examination, (a) "who have been at least for five years actively employed as an accountant, who shall [duly] apply in writing to the board for such certificate," and (b) "who have practiced for more than three consecutive years before the passage of this act on his own account as a public accountant, and who shall [duly] apply," etc. (section 6).

The business or professional advantage recognized and accorded or to be denied under the act is that such citizen or person who does not possess the registered certificate shall not be entitled to practice as a certified public accountant in this state or hold himself out as being such "C. P. A." in the transaction of the business of a public accountant. The penalty for the violation of the provisions of the statute is that of a misdemeanor, punishable by fine and imprisonment. Section 8. The grounds for revocation and cancellation of a certificate are "for any unprofessional conduct of the holder of such certificate, or for other sufficient cause," on "written notice," etc., stating the cause, appointing a day for a full hearing; and no certificate shall be revoked until after such hearing. Section 7.

It cannot be successfully maintained that the right in question is not a valuable one and will not be protected. If necessary to protect such right, injunctive process may be invoked, for one's profession is his capital. Constitution of Alabama, § 1; Hardie-Tynes Mfg. Co. v. Cruise, 189 Ala. 66, 66 South. 657; Franklin Social Club v. Phil Campbell, 204 Ala. 259, 85 South. 527; State v. Goldstein (Ala. App.) 93 South. 308;[1] Hill v. Wallace, 259 U. S. 44, 42 Sup. Ct. 453, 66 L. Ed. ——; Booth v. Illinois, 184 U. S. 425, 428, 22 Sup. Ct. 425, 46 L. Ed. 623, 626; Allgeyer v. Louisiana, 165 U. S. 578, 17 Sup. Ct. 427, 41 L. Ed. 832; N. Y. L. Ins. Co. v. Dodge, 246 U. S. 357, 38 Sup. Ct. 337, 62 L. Ed. 772, Ann. Cas. 1918E, 593; Adams v. Tanner, 244 U. S. 590, 37 Sup. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973. Touching the remedy, constitutional guaranties are section 6, containing the expression, "nor be deprived of life, liberty or property, except by due process of law," and section 7, "that no person shall be accused or arrested, or detained, except is cases ascertained by law, and according to the form which the same has prescribed; and no person shall be punished but by virtue of a law established and promulgated prior to the offense and legally applied." State and federal Constitutions contain like provisions that no ex post facto law shall be passed. Const. U. S. art. 1, § 9 (3); Const. Ala. § 22. The federal cases are that the ex post facto effect of a law cannot be evaded by giving a civil form to that which is essentially criminal. For example, in Cummings v. Missouri, 4 Wall. (71 U. S.) 277, 18 L. Ed. 356, was construed the effect of the test oath imposed by the Constitution of Missouri upon priests and ministers of religion; and Burgess v. Salmon, 97 U. S. 381,

---

[1] 18 Ala. App. 587.

385, 24 L. Ed. 1104, 1106, dealt with an act of Congress increasing the duty on tobacco, in suit for recovery of increased duty by statute not of force at the time the act was done. If, therefore, a statute have or be given a construction that would deprive a citizen of a natural or property right or subject him to punishment as a crime for past misconduct, it would offend such provisions of our Constitutions. An interesting discussion of retroactive statutes is contained in Barrington v. Barrington, 200 Ala. 315, 316, 76 South. 81.

The declaration is made that the Legislature of a state may enact a law that one who has been convicted of a crime shall no longer engage in the practice of medicine, and may require good character as a qualification for the conduct of that profession, and not offend as an additional punishment for past offenses as an ex post facto law. Hawker v. People of N. Y., 170 U. S. 189, 18 Sup. Ct. 573, 42 L. Ed. 1002. This power of a reasonable regulation of the professions or occupations, where the services were to be rendered the public, is justified under the police power of government. Gray v. Connecticut, 159 U. S. 74, 15 Sup. Ct. 985, 40 L. Ed. 80; McNaughton v. Johnson, 242 U. S. 344, 349, 37 Sup. Ct. 178, 61 L. Ed. 352, 356, Ann. Cas. 1917B, 801; Dent v. West Virginia, 129 U. S. 114, 9 Sup. Ct 231, 32 L. Ed. 623; Meffert v. Packer, 195 U. S. 625, 25 Sup. Ct. 790, 49 L. Ed. 350; Smith v. Texas, 233 U. S. 630, 34 Sup. Ct. 681, 58 L. Ed. 1129, 1132, L. R. A. 1915D, 677, Ann. Cas. 1915D, 420; Reetz v. Michigan, 188 U. S. 505, 23 Sup. Ct. 390, 47 L. Ed. 563; Watson v. Maryland, 218 U. S. 173, 30 Sup. Ct. 644, 54 L. Ed. 987; Ex parte Lockwood, 154 U. S. 116, 14 Sup. Ct. 1082, 38 L. Ed. 929; Comm. v. Goodrich, 13 Allen (Mass.) 546; Yeadon v. White, 36 Pa. Super. Ct. 360, 362; State v. Rice, 115 Md. 317, 80 Atl. 1026, 36 L. R. A. (N. S.) 344, Ann. Cas. 1913A, 1247; Wyeth v. Board of Health, 200 Mass. 474, 86 N. E. 282, 19 L. R. A. (N. S.) 242; People v. Ringe, 197 N. Y. 143, 90 N. E. 451, 27 L. R. A. (N. S.) 528, 18 Ann. Cas. 474; Chenoweth v. State Board, 57 Colo. 74, 141 Pac. 132, 51 L. R. A. (N. S.) 958, and notes, Ann. Cas. 1915D, 1188; Green v. Blanchard, 138 Ark. 137, 211 S. W. 375, 5 A. L. R. 84; State v. Goldstein (Ala. App.) 93 South. 308.[2] In the exercise of this power, the prohibition or test contained in a statute should be enacted with reference to that object as not unduly to "interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations." Smith v. Texas, supra; Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385; N., C. & St. L. v. Alabama, 128 U. S. 96, 9 Sup. Ct. 28, 32 L. Ed. 352; Smith v. State, 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508, 513.

[2] 18 Ala. App. 587.

In Dent v. West Virginia, supra, was construed a statute providing that no one except licensed physicians should be allowed to practice medicine, and that licenses should be issued by the state board of health only to those who were graduates of a reputable medical college, or who had practiced medicine continuously for 10 years, or those who were found upon examination to be qualified to practice. Discussing the test of (a) competency or (b) conditions on which the licenses were issued by the state board of health, it was held that 10 years' experience accepted as proof of fitness was reasonable; that such experience was not made the sole test, in that the privilege of practicing that profession was attainable by all others who produced a diploma from a reputable medical college, or stood the required examination showing that they were qualified for the performance of the duties of the profession as affecting those of the general public they might be called upon to serve. Smith v. Texas, supra; McNaughton v. Johnson, supra; Reetz v. Michigan, supra. Mr. Justice Lamar said of state statutes:

That "none of the cases sustains the proposition that, under the power to secure the public safety, a privileged class can be created and be then given a monopoly of the right to work in a special or favored position"; that a statute having such effect "would shut the door, without a hearing, upon many persons and classes of persons who were competent to serve and would deprive them of the liberty to work in a calling they were qualified to fill with safety to the public and benefit to themselves." Smith v. Texas, supra.

Under the foregoing established rules of statutory enactments, under our dual system of government, and the prohibitions and tests permitted, when applied to the instant statute, the tests and prohibitions contained therein are with reference to the object of the enactment, and do not unduly interfere with the private business so regulated, provided no unusual or unnecessary restrictions are imposed by the board upon such lawful occupation or profession in defining "unprofessional conduct" or "sufficient cause" for revocation of a certificate duly issued and registered. It must follow that, if the tests and prohibitions that may be contained in any statute as to the original issue of a certificate and registration thereof are limited to the extent of the constitutional inhibitions we have indicated after the issue and registry of such certificate, the authority and right of revocation and cancellation of registration is likewise restrained or limited by the same provisions of the organic law.

That all courts shall be open, and that every person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due process of law, and

right and justice shall be administered without sale, denial, or delay, are prescriptions of section 13 of the Constitution of Alabama given application in Hardie-Tynes Mfg. Co. v. Cruise, supra, and Montgomery v. Kelly, 142 Ala. 552, 38 South. 67, 70 L. R. A. 209, where there was an attempt at arbitrary or unlawful restraint on the conduct of business of citizens. The principle that no man shall be deprived of his liberty or property except by the law of the land is said to be more ancient than written Constitutions, "and breathes so palpably of exact justice that it needs no formulation in the organic law." State v. Bush, 12 Ala. App. 309, 68 South. 492. From such applications of justice and law come the decisions recognizing that injunctive aid will be extended in a proper case, in Brown v. Birmingham, 140 Ala. 590, 601, 37 South. 173, and the rule extended in Board of Com'rs of Mobile v. Orr, 181 Ala. 308, 61 South. 920, 45 L. R. A. (N. S.) 575, and applied in Hardie-Tynes Mfg. Co. v. Cruise, 189 Ala. 66, 81, 66 South. 657. See, also, Franklin Social Club v. Phil Campbell, supra; Harris v. Barrett, 206 Ala. 263, 89 South. 717. So of the federal cases Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169; Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220; Butchers' Union, etc., Co. v. Crescent City, etc., Co., 111 U. S. 746, 4 Sup. Ct. 652, 28 L. Ed. 585; Lawton v. Steele, supra. The averments of the bill show a necessity for invoking injunctive relief to prevent the infliction upon complainant of humiliation or punishment by revocation and cancellation of his certificate as a certified public accountant, if the authority for the proposed action of the board against the complainant rests alone on the provisions of section 7 of the act, unaided by the proper rules and regulations necessary and appropriate for the administration and enforcement of the right of the board to declare "unprofessional conduct" "sufficient cause" for revocation. Without such previous action of the board defining "unprofessional conduct" or "other sufficient cause" to revoke a license, unfavorable action to complainant by the board would humiliate and punish him greater than if he had been convicted for a misdemeanor. Under such indefinite declaration of acts sufficient to warrant revocation, complainant's trial, averred to be based partly upon past acts as being unprofessional conduct or sufficient cause for the revocation of his license, under such supposed authority of law, though it might eventuate in discharge, would materially tend to destroy the rights of the complainant before the public whom he would serve unembarrassed in the practice of his profession. This unquestioned confidence as a "certified public accountant" will be held to exist and be unaffected by any action of the board in the absence of theretofore declared causes for revocation by the board. His right to be so unquestioned and interfered with in the practice of his profession under the law stands on the same basis as important property rights made the subject of injunctive protection and relief by courts of equity. The board must first declare just and reasonable causes that are sufficient for revocation and cancellation of a license before condemnation and punishment may follow in its revocation and prosecution for his pursuit of his profession in its absence. Hardie-Tynes Mfg. Co. v. Cruise, supra; Mobile Com'rs v. Orr, supra.

Appellant challenges section 7 as unconstitutional on several grounds that should be more specifically treated. We may say that the powers contained are cognate to the title of the act, and not offensive to section 45 of the Constitution. Its indefinite provisions in section 7 for discretion given the board to declare causes for revocation, "for any unprofessional conduct of the holder of such certificate, or for other sufficient cause," are more difficult of reconciliation with the line of state and federal authorities (Montgomery v. West, 149 Ala. 311, 42 South. 1000, 9 L. R. A. [N. S.] 659, 123 Am. St. Rep. 33, 13 Ann. Cas. 651; Cooke v. Loper, 151 Ala. 546, 44 South. 78; B. R., L. & P. Co. v. Kyser, 203 Ala. 121, 82 South. 151; Czarra v. Board of Supervisors, 25 App. D. C. 443; U. S. v. Capital Tract. Co., 34 App. D. C. 592, 19 Ann. Cas. 68); and this power of the board is subject to limitations long recognized by the courts, since the board is an agency of government, and not an arm thereof, in the sense in which a municipality and a county is part of the government of the state (Hill v. Moody [Ala. Sup.] 93 South. 422 [3]), and may no more exercise arbitrary authority than such municipality. To such administrative agent may be given the power of the right exercise of "legislative discretion" merely, and not the power of legislation. State ex rel. Smith v. Justice, 200 Ala. 483, 76 South. 425; Johnson v. Craft, 205 Ala. 386, 407, 87 South. 375; Parke v. Bradley, 204 Ala. 455, 86 South. 28; Railroad Com. v. Railway Co., 182 Ala. 357, 62 South. 749; Fox v. McDonald, 101 Ala. 51, 13 South. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98. In Parke v. Bradley, supra, the holding was that the Legislature may constitute the medical association of the state the board of health of the state, and the county medical associations, in affiliation with such state association and board, boards of health for their respective counties, although the members and officers of such associations were and are chosen by the associations themselves, and even though the association of the state be considered a private corporation; that the implied constitutional limitation against the delegation of the lawmaking power was not intended to

---

[3] 207 Ala. 325.

prevent Legislatures from authorizing their own appointed agencies to make minor rules and regulations necessary and appropriate for the administration and enforcement of the general laws of the state as affecting the public health.

In the delegation of this power the Legislature must be held authorized to delegate to the state board of public accountancy the power to reasonably declare what acts of one holding a certificate and registration under the instant statute constituted "unprofessional conduct" or what causes were held by such board to be sufficient for revocation and cancellation, provided such conduct or acts declared as unprofessional and sufficient for revocation have a reasonable and proper regard and reference to the business or vocation of a certified public accountant, and not unreasonably to interfere with the pursuit of such private business or vocation by the imposition of unusual, unnecessary, and unreasonable restriction thereon, and provided that unprofessional conduct and causes declared sufficient shall, for revocation and cancellation, be not given retroactive and ex post facto effect and punishment. Such power specifically averred in the bill was never exercised by the board. No code of ethics or standard of professional conduct is averred to have been adopted or promulgated by the board or in any way defined so as to inform holders of certificates whether their conduct is in conformity therewith, and so to enable complainant to judge his conduct as a certified public accountant, and as giving cause for the cancellation of his certificate or prevent his conviction after reasonable notice and a full hearing by that board. They may not reserve to it, as a mere governmental agency, arbitrary power to blame or condemn according to the unrestrained will of the members who may constitute the personnel of the board from time to time. Such board must act within reasonable limitations on the exercise of discretion, and the conduct of the holders of certificates, before they may punish, adjudged according to declared and predetermined law, and not by way of the exercise of the volition or will of the members who may from time to time compose the board, and as it may affect the several individuals made the subject of the exercise of such delegated authority. Yick Wo v. Hopkins, supra.

In Mott v. Georgia State Board of Examiners, 148 Ga. 55, 95 S. E. 867, 869, 870, the authority of the board was questioned by mandamus to compel the issuance of a certificate to petitioner, who had complied with the requirements of the statute. The writ requiring the issue of certificate of registration was granted by the Supreme Court, notwithstanding statutory provision for an appeal. The refusal of the Georgia board to issue the certificate was based upon provisions contained in section 7 of that statute, providing:

"The state board of examiners * * * shall refuse to issue the certificate * * * to any person who shall have been guilty of grossly unprofessional and dishonest conduct."

Of the sufficiency of such legislative test or standard, Mr. Justice Gilbert said:

"* * * This portion of the act is clearly unconstitutional. 'When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power.' Yick Wo v. Hopkins, 118 U. S. 356–369, 6 Sup. Ct. 1064, 1071, 30 L. Ed. 220. Under the alleged authority of the act in question the certificate of registration was denied by the board without notice or hearing, and only after repeated inquiries was petitioner able to ascertain what judgment had been passed, and the basis therefor. Although he had complied with every requirement of the law, his certificate was refused on the ground that he had been guilty of 'grossly unprofessional and dishonest conduct,' in that he had 'made extravagant claims as to his skill.' * * * The provision in the act for an appeal to the superior court after the board has rendered judgment of condemnation is not a compliance with the mandate of the Constitution. It is not conceivable that the constitutional guaranty is satisfied when a *hearing is provided only after judgment in such a case.* To deprive one of the right to practice his profession is to subject him to humiliation, mortification, and injury, which the Constitution will not permit, except in conformity with the law of the land and on *evidence sufficient to authorize such a finding by an impartial tribunal.* To say that one may be adjudged guilty of 'grossly unprofessional and dishonest conduct,' for the reasons stated by the board in this case, is to demonstrate the arbitrary power which the act undertakes to lodge in the state board of optometry." (Italics ours.)

The reason given by the board in the Georgia case was that complaint had been filed against the applicant that he "made extravagant claims to his skill," and that it was the policy of the board to refuse certificates to applicants against whom "charges or complaints were made."

In the case of the State, ex rel. Attorney General and McCullough v. Scott and Others, constituting the State Board of Accountancy (1921) 182 N. C. 865, 109 S. E. 789, the action was for the purpose of enjoining the members of the board from exercising their duties of examining applicants beyond the limits of the state. It should be observed of the North Carolina statute made the subject of consideration that it contains similar provisions to that embraced in the Alabama statute for admission and revocation of the certificate of a certified public accountant; that the certificate granted by the board constituted a license to "practice as a certified public accountant"

within the state. Public Laws N. C. 1913, p. 254, § 16. In that case it is said:

"The state in the lawful exercise of its police power has created the state board of accountancy and required examinations of applicants to safeguard the public against incompetent accountants. Every citizen of the state is in a certain sense injured when the duties of the board are performed in such a manner as to let down the bars and lower the standards of the profession. There is an especial injury *to properly accredited members of the profession who have met the conditions imposed by law,* in the manner prescribed by law. Poor Richard says, 'He who hath a trade hath an estate.' A man's profession is his capital. The state has set standards for entrance into this profession, and those who have entered in the manner prescribed by law are entitled to the protection of the state to the extent, at least, that they shall not be unjustly discriminated against by admission of others into the profession in any other way than that prescribed by law. * * *

"In the Marshall Case, supra [Marshall v. Com'rs, 89 N. C. 103], the court said: 'The injunctive relief sought in this action is not merely auxiliary to the principal relief demanded, but it is the relief, and a perpetual injunction is demanded. To dissolve the injunction, therefore, would be practically to deny the relief sought and terminate the action. This the court will never do where it may be that possibly the plaintiff is entitled to the relief demanded. In such cases it will not determine the matter upon a preliminary hearing upon the pleading and ex parte affidavits; but it will preserve the matter intact until the action can be regularly heard upon its merits. Any other course would defeat the end to be attained by the action.'" (Italics ours.)

The statute of North Carolina and that of Alabama do not forbid the pursuit of the vocation of a public accountant without the issue and registration of a certificate, but only forbid the practice of that profession as "certified public accountant" without such certificate, for which provision is made by statute. The object or effect of our statute is that public accountants are divided into classes: (1) Those who are vouched for by the state in the creation of a class of certified public accountants, limited to those members admitted to that class by the board provided by law, the members of which class are protected in the superior right of guaranteed proficiency, by its being made a misdemeanor for those not of that class to hold themselves out to the public as being of the certified class; and (2) those who are accountants without having been admitted to class 1, or accountants who, being so admitted, have lost the right of certification by revocation and cancellation of their certificates by authority of the state board. It must follow that an arbitrary denial by the board of a certificate and its registration as "C. P. A.," and the right to practice the profession of a public accountant in the certified class without regard to qualifications —as residence, age, proficiency, and character—would be offensive to the right of any citizen to practice that profession as a certified public accountant so qualified as required by law. So also would the arbitrary denial, under like facts and circumstances, to a citizen of the right to further practice that profession or vocation within the state, be an unlawful revocation and cancellation of his certificate.

Analogy is contained in the result announced in State v. Goldstein (Ala.App.) 93 South. 308,[4] and U. S. v. Cohen Groc. Co., 255 U. S. 81, 41 Sup. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045, since similar provisions to those contained in the Fifth and Sixth Amendments to the Constitution of the United States are embraced in sections 6 and 7 of the Constitution of Alabama.

In the Cohen Case, supra, Mr. Chief Justice White declared that the act was offensive to the guaranties and limitations contained in the Fifth and Sixth Amendments to the Constitution, for the reason that Congress may not enact laws as to delegate "legislative power to courts and juries," to penalize "indefinite acts," and to deprive "citizens of the right to be informed of the nature and cause of accusations against them," that under such constitutional guaranties and limitations legislation fixing prohibitions and penalties is required to embrace and declare an "ascertainable standard of guilt, fixed by Congress rather than by courts and juries," and that accused persons have a right to "be informed of the nature and cause of accusations against them." Commenting upon the lack of due observance in the Lever Act of the inhibitions of the Constitution, the Chief Justice declared, as defects of that statute, that it confines the subject-matter of the investigation which it authorizes to no "element essentially inhering in the transaction as to which it provides"; that it "leaves open * * * the widest conceivable inquiry, the scope of which no one can foresee, and the result of which no one can foreshadow or adequately guard against." And Mr. Chief Justice Waite said of the failure of observance of the limitations in enactment of penal statutes that it would be—

"dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. The courts enforce the legislative will when ascertained, if within the constitutional grant of power. Within its legitimate sphere, Congress is supreme and beyond the control of the courts; but if it steps outside of its constitutional limitation, and attempts that which is beyond its reach, the courts are authorized to, and when called upon in due course of legal proceedings must, annul its encroachments upon the reserved power of the states and the people." U. S. v. Reese, 92 U. S. 214, 23 L. Ed. 563.

[4] 18 Ala. App. 587.

This just observation has been given application by this court in Dorman v. State, 34 Ala. 216; State v. Goldstein (Ala. App.) 93 South. 308;[4] Johnson v. Craft, 205 Ala. 386, 87 South. 375. So also was this a test recognized by the Supreme Court of the United States in passing upon state statutes in International Harvester Co. v. Ky., 234 U. S. 216, 34 Sup. Ct. 853, 58 L. Ed. 1284; Collins v. Ky., 234 U. S. 634, 34 Sup. Ct. 924, 58 L. Ed. 1510; Nash v. U. S., 229 U. S. 373, 33 Sup. Ct. 780, 57 L. Ed. 1232. If Legislatures or Congress may not so enact as to courts and juries, they may not delegate to governmental agencies the exercise of legislative discretion of larger import than that the sovereign may define and enact. The discharge of administrative or governmental function by legislative agent must therefore be reasonably exercised with due regard to the subject dealt with and objects to be attained, to the end that unjust and oppressive interference with the conduct of private businesses and professions be not affected through arbitrary and unreasonable restrictions. Smith v. Texas, supra; Lawton v. Steele, supra; N., C. & St. L. v. Alabama, supra; Standard Chem. Corp. v. Waugh Corp., 231 N. Y. 51, 131 N. E. 566, 14 A. L. R. 1054; Arver v. U. S., 245 U. S. 366, 38 Sup. Ct. 159, 62 L. Ed. 349, L. R. A. 1918C, 361, Ann. Cas. 1918B, 856. That is to say, under the authority reposed by the Legislature in the state board of public accountancy to exercise legislative discretion in the administration of delegated functions of government and the definitions of "unprofessional conduct" of a holder of a certificate that will be "sufficient cause" for revocation thereof, no greater power is given than may have been exercised under the organic law by the Legislature itself.

If, in the discharge of that administrative function in the state board for revocation and cancellation of the certificate of "certified public accountant" granted by authority of law, that board should undertake to penalize for past conduct of a registrant (which conduct should have been discovered by the board before the issue of the certificate and from the discovery of which it was not prevented by fraud of the applicant that entered into his examination and determination of his qualification or fitness for the issue of his certificate), and give his crime and punishment a retroactive or ex post facto effect by a definition of unprofessional conduct or other sufficient cause for revocation, such retroactive application and punishment would be offensive to provisions of the respective Constitutions. Constitutional inhibitions as to state statutes unduly limiting and regulating private businesses were the subjects of discussion in Fox v. Washington, 236 U. S. 273, 35 Sup. Ct. 383,

59 L. Ed. 573; Waters-Pierce Oil Co. v. Texas, 212 U. S. 86, 29 Sup. Ct. 220, 53 L. Ed. 417; Miller v. Strahl, 239 U. S. 426, 36 Sup. Ct. 147, 60 L. Ed. 364; Nash v. U. S., supra; Omæchevarria v. Idaho, 246 U. S. 343, 38 Sup. Ct. 323, 62 L. Ed. 763; Arizona Copper Co. v. Hammer, 250 U. S. 400, 39 Sup. Ct. 553, 53 L. Ed. 1058, 6 A. L. R. 1537, Authorities defining the limitations to statutes affecting the conduct of the several professions are Meffert v. Packer, supra; Dent v. W. Va., supra; Reetz v. Michigan, supra; Gray v. Conn., supra; McNaughton v. Johnson, supra; Smith v. Texas, supra; Lawton v. Steele, supra; N., C. & St. L. v. Alabama, supra; Smith v. State, supra; Watson v. State of Maryland, 218 U. S. 173, 30 Sup. Ct. 644, 54 L. Ed. 987; Collins v. Texas, 223 U. S. 288, 32 Sup. Ct. 286, 56 L. Ed. 439; Hawker v. People of N. Y., supra.

In Czarra v. Medical Supervisors, supra, construing an act of Congress providing that any licensee of the medical board was subject to have his license revoked upon being found guilty of "unprofessional or dishonorable conduct," was held insufficient to inform the accused of the nature and cause of accusations against him preserved by the Sixth Amendment to the Constitution of the United States, requiring that one be informed by the indictment or information presented against him, since the fundamental requisite is that the crime or offense with which he stands charged shall be defined with reasonable precision, and that he be informed by the Legislature "with reasonable precision" what acts are intended to be prohibited. This case has been followed in U. S. v. Capital Tract. Co., 34 App. D. C. 592, 19 Ann. Cas. 68, where a judgment was upheld quashing an information charging the Capital Traction Company with operating its cars within the District in violation of section 16 of the act of Congress (35 Stat. 246, c. 190); that provision being that every street railroad company shall supply and operate a "sufficient number of cars," with "proper and safe power," etc., comfortable and convenient, and so operate the same as to give expeditious passage, etc., "without crowding said cars," giving the Interstate Commerce Commission power "to make all such orders and regulations necessary to the exercise of the powers granted to it as may be reasonable and proper," providing penalties for the violation of the provisions of the section and any of said orders or regulations made by said Commission. The provisions of the Sixth Amendment to the Constitution of the United States, that in all criminal prosecutions the accused shall be informed of the nature and cause of the accusation were held violated by said provisions of the act in the total absence of any definition of what constituted a "crowded car," an important element, said not to be left to conjecture or supplied by the court or jury.

[4] 18 Ala. App. 587.

The reason given for the holding was that "the dividing line between what is. lawful and unlawful cannot be left to conjecture"; that the "citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions," and citing the quotation we have given above from U. S. v. Reese, supra. The question whether or not the power of the Interstate Commerce Commission to supply by rule or regulation what the statute lacks in regard as we have indicated was propounded without answer, the court saying:

"No such attempt has been made; hence the question is not before us. The judgment of the police justice sustaining the motion to quash the information is affirmed."

Neither of the foregoing cases from the District of Columbia has been reviewed by the Supreme Court of the United States. Such power discharged by legislative agents is an administrative function or discretion and can be justified only in the right to make reasonable rules to limit and regulate future conduct of those observing or coming in conflict with such rules (Whaley v. State, 168 Ala. 152, 52 South. 941, 30 L. R. A. [N. S.] 499; Birmingham R., L. & P. Co. v. Kyser, 203 Ala. 121, 82 South. 151), and not in the giving of retroactive or ex post facto effect thereto. Such is the answer to the erroneous rulings of the trial court in sustaining demurrer to complainant's bill and decreeing that the motion to dissolve the temporary restraining order be dissolved.

The distinction is made between the instant case, where the defendant has the right to practice his profession without arbitrary limitation or restraint—and this profession may not be wholly forbidden—and the case of State ex rel. Crumpton v. Montgomery et al., Excise Com'rs, 177 Ala. 212, 237, 59 South. 294, 301, where it is said:

"It is universally recognized that the act of engaging in the sale of intoxicants may be wholly forbidden, and that a license to engage in the traffic in liquors is a privilege merely, revocable at the will of the superior granting power; that there is in it no element of property right or vested interest of any kind."

There is no question of the "selection of the beneficiaries of a mere privilege" of those qualified as certified public accountants to practice that profession; but the arbitrary denial or revocation of the certificate of any member within that class involves "a matter of right" that may not be committed to the arbitrary discretion of the state board; and engaging in the business of a public accountant in its most favorable aspects may not be wholly forbidden. The right of the state to regulate certain occupations which may become unsafe or dangerous when unrestrained with a view to protect the public health and welfare has been recognized by the Supreme Court of the United States in foregoing authorities cited and in the discussion of People of the State of N. Y. v. Van De Carr, Warden, 199 U. S. 552, 26 Sup. Ct. 144, 50 L. Ed. 305. Yet such regulation is required to be uniform, and, as we have seen, the board shall not act arbitrarily; and if the provisions of section 7 of the instant act vested in the state board arbitrary power to grant a license to one person as a certified public accountant and to refuse a license to another similarly situated, or to revoke the license of one such certified accountant and refuse to revoke the license of another similarly situated, the same would undoubtedly be invalid. Yick Wo v. Hopkins, supra; Gundling v. Chicago, 177 U. S. 183, 20 Sup. Ct. 633, 44 L. Ed. 725; and other authorities collected in People of State of N. Y. v. Van .De Carr, supra.

The trial of complainant, in the absence of a reasonable definition of the causes for revocation of certificate under the provisions of section 7 of the act, would leave such arbitrary discretion in the state board, which would authorize or be susceptible of a different application to the same facts, dependent, on the one hand, on who composed the members of that state board, and, on the other, on who was the subject of the investigation or trial. This arbitrary power is contrary to the letter and spirit of both state and federal Constitutions. And, to save the statute, a reasonable discretion in defining causes of revocation must be first exercised before any member may be lawfully placed on trial by the board for revocation of his license.