# Board of Commissioners City of Mobile, *et al.* *v.* Orr.

*Bill to Enjoin Enforcement of an Ordinance.*

(Decided April 10, 1913.  61 South. 920.)

1. *Constitutional Law; Class Legislation; Classification.*—Statutes may classify and discriminate between classes if the classification is founded on distinctions reasonable in principle and having just relations to the object to be accomplished.

2. *Same; Ordinances; Reasonableness.*—A wide discretion is conceded to the legislative branch of city governments in the adoption of ordinances to promote public health and comfort, but in the exercise of the court's ancient jurisdiction, such ordinances will be declared void if they are unreasonable or inconsistent with the gen-

[Board of Commissioners City of Mobile, et al. v. Orr.]

eral purposes of the law of the land, especially when referring to the liberty of the citizen and his right of private property.

3. *Same.*—An ordinance is invalid for inequality and unreasonableness which provided that all stables within the city's jurisdiction where two or more horses, mules or cows were kept, should be connected with the water mains and sanitary sewers of the city, and that the stalls, pens, etc., should be paved with cement or brick, according to particular specifications, and imposing fines and penalties for failure to do so after notice, where the city's jurisdiction extended a considerable distance beyond its sewer system.

4. *Same; Public Health; Regulation.*—While the regulation of the keeping of animals within the limits of a city is a proper subject for police regulation to conserve the public health, yet where the city permits the disadvantages arising from the collection of animals in groups or numbers, there is no reasonable grounds for classification in the regulation of animal pens within the city between the keepers of single animals and those who keep two or more.

5. *Injunction; Subjects; Criminal Ordinance; Property Rights.*— While a court of equity will not enjoin criminal or quasi criminal prosecutions under a city ordinance because the ordinance is invalid or unreasonable, though the consequences to the complainant of allowing the prosecution to proceed may be grievous and irreparable, there being an adequate remedy at law, yet the courts will interfere by injunction where such prosecutions will destroy or impair property rights.

6. *Same.*—Where the ordinance would require large expenditures to comply therewith and repeated prosecutions under it had .been threatened, and complainant is left to the alternative of going to considerable expense to comply with the ordinance, or submit to the vexation of repeated prosecutions under a void ordinance, equity will enjoin the enforcement of the ordinance until its validity can be determined.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Wade H. Orr against the Board of Commissioners of the City of Mobile and the City Health Officers to enjoin the enforcement of an ordinance requiring the paving of certain stables and connection thereof with the city sewerage system, and to declare the ordinance invalid as unreasonable. From a decree granting a preliminary injunction, respondent appeal. Affirmed.

The bill alleges that the complaint comes within the purview of a certain ordinance adopted by the board of commissioners of the city of Mobile to become effective

after January 1, 1913. It is alleged that the complainant would have to spend several hundred dollars in order to lay the cement floor required by the ordinance and would have to procure other quarters for his stock while the floor was being laid and while it was hardening. It is further alleged that the ordinance is unconstitutional and unreasonable: First. Because it is limited to persons who keep more than one animal, requiring the man who keeps more than one to lay a floor according to specifications, while he who keeps only one animal is not required to do so, although, in fact, there is no sanitary distinction which would justify such a classification, and, on the contrary, the aggregate number of horses, mules, and cows which are kept in the city of Mobile by persons who own only one animal largely exceeds the aggregate number of horses, mules, and cows which are kept in the city of Mobile by persons keeping two or more animals. Second. That the ordinance is unreasonable because of the expense required to comply with it, and because the mineral floors, uncovered by wood, would be seriously injurious to the animals kept therein, and for other reasons not necessary to here state. Other matters are set up as rendering the ordinance unreasonable and void, but they sufficiently appear from the opinion. The ordinance is as follows:

"Be it ordained by the board of commissioners of the city of Mobile:

"Section 1. That every stable, shed or lot, where two or more horses, mules or cows are kept, in the city of Mobile, shall be thoroughly cleaned at least once each day; and when such animal or animals are kept in a stable, shed or other building, such building shall have sufficient light to make cleaning practicable, and sufficient ventilation to keep the air of such building at all times

pure; and no person or corporation shall maintain or use any stable for two or more such animals in violation of this ordinance.

"Sec. 2.    That every stable, shed, or other building, where two or more horses, mules or cows are kept, shall have either within, or immediately adjoining, a watertight, covered room, or box or bin barrel, for receiving and holding manure and litter accumulating between the times of removal from the premises.   The fitness of such room, box, bin, or barrel shall be passed upon by the city health officer.

"Sec. 3.    Be it further ordained, that all stall floors in stables shall drain into gutters, the said gutters to be connected through catch basins with the sanitary sewerage system of the city, in accordance with section 671 of the Code of Ordinances of the City of Mobile of 1907.

"Sec. .4.    That the floors of all stables must be constructed of concrete at least four inches thick, with a smoothly troweled wearing surface at least three-fourths of an inch thick, composed of Portland cement, and in the proportion of one part to one and one-half parts of sand:   Provided, that in lieu of a cement wearing surface, vitrified paving brick with grouted cement joints, or other substantial mineral pavement impervious to water and not less than four inches thick, may be substituted.   The floor of stalls or portions of the floor on which animals stand may be of concrete, brick or other substantial mineral pavement as specified above, or may be constructed of creosote wood blocks laid on a concrete foundation, or of planking laid on such foundation:   Provided, further, that the floors which are affected by the provisions of this section are the floors of the stalls and of a space not less than three feet outside of the stalls, where stalls are used, and the

floors of the pens where stock is penned and held or fed; and this section shall not apply to any portion of a stable which is not used for stabling, standing, hitching, picketing, or penning stock, but only used for a passage or runway.

"Sec. 5. That a three-quarter inch hosebib, equipped with hose, shall be placed so that the drainage system may be readily flushed; and that all stable floors must be thoroughly cleaned and flushed as often as necessary, and at least twice each week.

"Sec. 6. Be it further ordained, that every person, firm, association or corporation upon whose or its premises, within the city of Mobile, is kept one or more horses, mules or cows, shall register at the office of the board of health the name of the owner, the location where such animal or animals are kept, and the number of the animals at any given location.

"Sec. 7. Be it further ordained, that any violation of this ordinance by any person, firm, association, or corporation shall be punished by the recorder by a fine of not less than ten dollars or more than one hundred dollars for the first offense, and not less than five dollars per day for each succeeding day that the offense continues after notice has been given by the city health officer.

"Sec. 8. Be it further ordained that this ordinance shall be in force and effect from and after the date of its adoption: Provided, however, that compliance with sections 5 and 4 may be delayed until the first day of November, 1912; and thereafter, the entire ordinance, without exception, shall be in full force and effect."

Section 4, as above quoted, is an amendment of section 4 as formerly adopted, and the ordinance was further amended by the following:

"Sec. 7.  Be it further ordained, that this ordinance and the amendment of section 4 this day adopted shall be in force and effect from and after January, 1, 1913."

B. BOYKIN BOONE, for appellant.  The ordinance as applied to the agreed statement of facts is not violative of any provision of the national constitution.— *Muggler v. Kansas,* 123 U. S. 623.  Neither does the ordinance violate any provision of the state constitution. *Ex parte Bird,* 84 Ala. 18; 82 N. Y. 318; 16 Mo. App. 131.  The court has no jurisdiction to enjoin respondent.—*L. & N. v. Port of Mobile,* 84 Ala. 119; 67 Am. Dec. 186; *Burnett v. Craig,* 30 Ala. 165; *Brown v. Mayor of B'ham,* 140 Ala. 590; *Old Dominion Tel. Co. v. Powers,* 140 Ala. 220; *Moses v. Mobile,* 52 Ala. 198; 172 U. S. 516; 124 U. S. 200.  The ordinance was not void as a discrimination.—*Ex parte Bird, supra;* 55 Ar. St. Rep. 385; McQuillan Mun. Ord. 909.  The authority of the city to pass the ordinance is unquestioned.— Secs. 1251, 1278, Code 1907; 162 Ill. 503; 149 Ill. 378; Cooley's Const. 138; *Town of Greensboro v. Ehrenreich,* 80 Ala. 581.

GREGORY L. & H. T. SMITH, for appellee.  There is no question of the authority of the chancery court to restrain the enforcement of the ordinance here.—*Port of Mobile v. L. & N.,* 84 Ala. 115; *Town of Cuba v. Mississippi C. O. Co.,* 150 Ala. 259.  The ordinance is unconstitutional because it discriminates between the owner of one animal and the owner of two or more animals.—Sec. 1230, Code 1907; *Cuba v. Mississippi C. O. Co., supra; Town of Crowley v. West,* 27 South. 53; 55 Pac. 403; 58 Pac. 1089; 67 N. E. 846; 51 N. E. 136. The ordinance is unreasonable, and therefore, void.— 39 Atl. 706; 130 N. W. 934; 82 N. W. 445; 73 N. E. 1035.

SAYRE, J.—The statutes of the state, with which the quasi legislative acts of inferior municipal bodies must be classed so far as concerns the constitutional requirement of equal laws, are not to be put aside by judicial decree, except upon satisfactory assurance that they do offend against the principle of equality. Classification, or discrimination between classes, is allowed if founded upon distinctions reasonable in principle and having just relation to the object sought to be accomplished. The courts concede a wide discretion to the legislative authority in respect of the grounds of classification, and must be reluctant to disturb even a municipal ordinance enacted in pursuance of a comprehensive grant of power, and designed presumably to promote the public health and comfort, but the power to condemn is more freely exercised in such cases, for, as to municipal ordinances, it was an ancient jurisdiction of judicial tribunals to pronounce upon their reasonableness and consequent validity. It was always the doctrine of the courts that every ordinance or by-law must be reasonable and not inconsistent with the general principles of the law of the land, particularly those having relation to the liberty of the citizen and the rights of private property.—*Yick Wo v. Hopkins,* 118 U. S. 371, 6 Sup. Ct. 1064, 30 L. Ed. 220.

The ordinance in question is challenged as being unreasonable and violative of that equal protection of the law which is guaranteed by the fourteenth amendment of the Constitution of the United States. While, on our common knowledge of the considerations of fact involved and such information as we gather from the sworn bill and the other affidavit upon which the chancellor acted in granting the preliminary injunction, we would not feel justified in declaring unreasonable and oppressive that part of the ordinance which regulates .

[Board of Commissioners City of Mobile, et al. v. Orr.]

the materials with which stalls and pens must be floor-
ed and the manner of laying the floors as involving too
great expense and as unnecessarily injurious to ani-
mals compelled to stand and sleep upon them, though
possibly that may appear to be proper on full proof, yet
on consideration of the face of the ordinance and those
undisputed consequences which will follow its enforce-
ment throughout the territory to which it is applicable,
in connection with the aforementioned principles of
law, we feel constrained to the opinion that wherein it
requires stalls and stables to be connected with the
water mains and sanitary sewers of the city the ordi-
nance will work unconscionable hardship to many who
fall within its terms, and that wherein it undertakes to
divide the owners and keepers of animals into two clas-
ses it proceeds upon no sound basis and is unreason-
ably discriminatory and invalid.

The manifest purpose of the ordinance is to provide
for the sanitation of the city and the comfort of its in-
habitants. The effort is to exert the police power by
which the owner of property may be limited in the ex-
ercise of his ownership; and, if thereby he is dam-
aged to some extent, he is nevertheless in contemplation
of law compensated and made whole by sharing in the
advantages which flow from regulations demanded by
the common good. The keeping and housing of animals
is peculiarly a business which may or may not be offen-
sive and hurtful according as it is carried on.—2 Cooley
on Torts, 1251. Because of its tendencies it has long
been recognized as the proper subject of police regula-
tion, and we are not disposed to any narrow interpre-
tation of the power which may be exercised for the pub-
lic health and comfort. A reasonable line of distinc-
tion may be drawn between the case of keepers of sin-
gle animals and that of keepers of many, as, for exam-

ple, public livery stables and dairies. The presence of aggregations of animals in crowded quarters, be they never so scrupulously housed and kept, may be cause of annoyance and offense to the neighborhood, and may therefore with good reason be prohibited within areas in which the keeping of single animals is allowed. But if the municipality chooses to tolerate those inevitable disadvantages which attend the collection of animals in groups, it occurs to us that there are no sufficient reasons why similar feasible sanitary conditions should not be required in the case of keepers of single animals as well as in that of the keepers of two or more. If the public health and comfort require that where two or more animals are kept together they shall stand upon concrete floors, their droppings kept in watertight receptacles, their stalls or pens connected with water mains, drained into sanitary sewers, and thoroughly cleaned at least once each day, all to the good end, no doubt of preventing the diffusion of odors and the breeding of the pestilent fly, it would seem that an impartial imposition of the burdens of police regulation ought to exact similar precautions of the keepers of single animals far more numerous in the aggregate.

Again, the affidavits show that there are wide, though thinly populated, areas of the outlying territory within three miles of the corporate limits, known as the police jurisdiction of the city of Mobile, over which its police and sanitary regulations, prescribing fines and penalties for violations thereof, have force and effect (Code, § 1230), and similar areas within the city proper, far removed from either the water mains or the sanitary sewers of the city, so that, practically speaking, persons keeping animals within these areas will be unable to comply with the requirements of the ordinance. The ordinance, however, without qualification or limitation,

is applicable to the keepers of two or more animals within this territory. Ordinances are to be construed benevolently, it has been said, and the terms of ordinances and statutes alike are subject to certain practical limitations. Such is the case with most laws couched in comprehensive terms. We would find no difficulty, therefore, in holding that a practical exception must be grafted on the ordinance in favor of the keepers of stables far removed, say, a mile, from any sanitary sewer of the city. But cases might arise under the ordinance in question in which it might be a matter of great difficulty to determine whether a stable should in reason be required to have connection with a sewer, and that possibility tends strongly to shake the authority of the ordinance. Where exceptions are to be determined, not upon consideration of the nature of the thing required, but upon conditions which furnish just ground of classification, the legislative will of the municipality ought to find expression in the definite and discriminating language of the ordinance. It is not the business of the courts to amend municipal ordinances or lick them into shape on their own notions of convenience, feasibility, and justice, to meet the exigencies of particular cases. It is for the legislative authority, not the judicial, to classify. So, then, without holding that the ordinance under consideration would be so unreasonable as to be void if it were limited to particular districts of the city and made applicable alike to all keepers of animals within the district, on the case presented we have reached the conclusion that within large areas of the city and its police jurisdiction the ordinance in its present shape is practically impossible and unreasonable, and that everywhere it is discriminatory, without reasonable basis for discrimination.—

*Chicago v. Gunning System,* 214 Ill. 628, 72 N. E. 1035, 70 L. R. A. 230, 2 Ann. Cas. 892.

But appellant denies the right of the chancery court to interfere. It is a plain proposition of law that equity will not exert its powers merely to enjoin criminal or quasi criminal prosecutions, "though the consequences to the complainant of allowing the prosecutions to proceed may be ever so grievous and irreparable."—*Brown v. Birmingham,* 140 Ala. 600, 37 South. 174. "His remedy at law is plain, adequate, and complete by way of establishing and having his innocence adjudged in the criminal court."—Id. To the same unquestionable effect are *Old Dominion Telegraph Co. v. Powers,* 140 Ala. 220, 37 South. 195, 1 Ann. Cas. 119, and other cases cited there and in *Brown v. Birmingham, supra.* As for multiplicity of prosecutions, it is said in the last-mentioned case that: "The occasion and necessity for such suits may be avoided by his simple desistance from repeated violations of the ordinance while its validity is being tested in one prosecution." But this court has with equal clearness recognized the power and duty of the equity courts to interfere by injunction where quasi criminal prosecutions under municipal ordinances will destroy or impair property rights.—*Brown v. Birmingham, supra; Bessemer v. Bessemer Water Works,* 152 Ala. 391, 44 South. 663; *Bryan v. Birmingham,* 154 Ala. 447, 45 South. 922, 129 Am. St. Rep. 63; *Town of Cuba v. Mississippi Oil Co.,* 150 Ala. 259, 43 South. 706, 10 L. R. A. (N. S.) 310; *Mobile v. L. & N. R. R. Co.,* 84 Ala. 115, 4 South. 106, 5 Am. St. Rep. 342; *Montgomery v. L. & N. R. R. Co.,* 84 Ala. 127, 4 South. 626. Now, in the case made by the bill, the city of Mobile, acting through its duly constituted officers, is seeking to enforce a void municipal ordinance which would impose serious financial burdens upon complainant both by rea-

son of the expenditure of money necessary to put his property in the required condition and by reason of losses which will be necessarily caused by the interruption of his perfectly legitimate and highly useful business, which is also his property and entitled to some measure of protection. The ordinance provides that any violation shall be punished by a fine for each day the offense continues after notice has been given by the health officer of the city, and the averment is that the health officer has publicly stated and intends to cause the arrest of complainant, if he fails to comply, and to continue to have him arrested constantly and repeatedly until he does comply, or until the ordinance is declared null and void by the courts of the land. Complainant could not adequately and completely meet the situation here shown by desistance from repeated violations of the ordinance while its validity is being tested in one prosecution. Mere inaction will not avail him, nor, under the circumstances alleged, is it to be expected that one prosecution will be allowed to determine his rights. He must either go to very considerable expense to comply with the ordinance, though void, or he must submit to the vexation of repeated prosecutions without warrant, though under color of law. And herein we think the present case is to be distinguished from *Forcheimer v. Mobile*, 84 Ala. 126, 4 South. 112. This situation of the complainant, we think, also takes his case without the controlling influence of *Brown v. Birmingham* and *Old Dominion Telegraph Co. v. Powers*, *supra*, where no property rights were involved, and brings it fairly within that class of cases in which equity will intervene for the prevention of oppressive and vexatious litigation affecting property rights where it takes, or is about to take, the form of an effort to enforce a void municipal ordinance by means of repeated

prosecutions thereunder. To our own cases, which have been cited above, we may add *Baltimore v. Radecke*, 49 Md. 217, 33 Am. Rep. 239, which was cited in *Mobile v. L. & N. R. R. Co., supra,* and *Davis v. Fasig,* 128 Ind. 271, 27 N. E. 726.

The chancellor's decree, ordering a preliminary injunction, will be affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.