# Warren v. Cameron, et al.

### Injunction.

(Decided April 5, 1917.  74 South. 949.)

1. **Animals; Quarantine; Right to Enter Premises; Statute.**—The state live stock inspector and quarantine officer for a county, and his assistants, if not lawful officers duly appointed, have no authority to enter on a cattle owner's premises for inspection or enforcement of the tick eradication laws, as authorized by Code 1907, section 764, providing that the state veterinarian or assistant may enter premises to execute the quarantine laws.

2. **Injunction; Adequate Remedy at Law.**—The owner of cattle filed a bill against the state live stock cattle inspector and quarantine officer for a county, and others, seeking temporary injunction restraining respondent from further dipping the cattle to enforce the tick eradication laws. The bill alleged that respondents had not been appointed assistant veterinarians or inspectors as provided by law. Held, that the allegations did not bring the case within any recognized field of preventive equity jurisdiction, since complainant was under no compulsion to obey the commands of respondents, and if any one of them should institute a criminal prosecution against him for refusing to bring his cattle to be dipped, complainant would have a complete defense.

3. **Injunction; Exhaustion of Other Remedies.**—A court of chancery would not in any case interfere by injunction with the live stock cattle inspector and quarantine officer for a county and his assistants to prevent irreparable injury to a cattle owner in the enforcement of the tick eradication laws, unless it were made to appear that the owner had first applied to the state live stock sanitary board, which, with notice of alleged abuses, refused or failed to intervene.

APPEAL from Morgan Chancery Court.

Heard before Hon. JAMES E. HORTON, JR.

Bill by Thomas H. Warren against W. W. Cameron, individually and as State Live Stock Cattle Inspector and Quarantine Officer for Morgan County, and others, seeking a temporary injunction, restraining respondent individually and as such officer from the further dipping of orator's cattle or interfering

with him in the disposition of said cattle, until a hearing of the cause, and that on a final hearing the injunction be made permanent. The chancellor denied the application for a temporary injunction, and complainant appeals. Affirmed.

The bill alleges that the respondents are assuming authority to enforce the tick eradication laws, as prescribed by the state live stock sanitary board in Morgan county, by requiring cattle owners to bring their cattle to certain specified dipping vats, and dip same therein on dates named, and every two weeks thereafter until relieved by the particular respondent in charge at each vat. It is alleged that these respondents are acting only under authority claimed under appointment by the court of county commissioners of Morgan county, that they are acting without authority at law, and that their appointment is void. The bill describes the process of dipping, and that the dipping solution in the various vats has become, by the negligence and mismanagement of inspectors, excessively poisonous and dangerous and destructive to cattle; that complainant has about 20 head of cattle, including 12 milk cows, from which he derives his living, and which, for several years, have been free from ticks, or any exposure thereto, as have also the stalls, lots, and pastures in which they are kept. Under the requisition of respondent Blackmon, complainant produced his cattle in April, 1916, and they were subjected to dipping then, and at intervals three or four times thereafter, whereby they have suffered serious and increasing injuries, and have fallen off 50 per cent. in their milk. The bill then alleges:

"That the injuries received by said cattle are due proximately to the negligence, and the gross and wanton carelessness of the said W. T. Blackmon in and about the manner in which he executed the process of dipping, and in preparing the solution for the dipping of said cattle, and his said cattle were poisoned by taking into their stomachs the poisonous matter of which said solution was composed."

The gravamen of the bill is:

"That your orator has reasonable apprehension that his said cattle will be further injured and probably fatally injured should he be further required to have them dipped under the supervision of the said Blackmon, or any one of the said respondent inspectors."

It is also alleged that complainant protested against the dipping of his said cattle after the injuries resulting from the first

said dipping, but the said Blackmon, under threats of arrest and imprisonment, compelled him to bring his said cattle to be dipped. The allegation is also made in the bill that each and all of said respondents are insolvent, and unable to respond in damages for any injuries that might occur.

H. V. CASHIN for appellant. D. C. ALMON for appellee.

SOMERVILLE, J.—Section 759 of the Code provides that: "The state veterinarian shall, by and with the advice and consent of the state live stock sanitary board, nominate as many assistant state veterinarians and state live stock inspectors as they may deem necessary," etc.

Section 766 provides that federal veterinaries and live stock inspectors doing work in Alabama may be appointed as state assistants in the same way.

(1) If it is a fact, as alleged in the bill of complaint, that these respondents have not been appointed assistant veterinarians or inspectors in the manner provided by law, then they are without authority in the premises, and complainant is under no compulsion to obey their commands. And if, for his lawful disobedience, any one of them should institute a criminal prosecution against complainant, complainant's legal defense therein would be simple and adequate, and he does not need the aid of a court of chancery. The bill of complaint, as we read it, shows merely the threat of arrest by criminal proceedings, for disobedience to unlawful requirements—in short, coercion by criminal prosecution. Respondents, if not lawful officers, have no authority to enter upon complainant's premises for inspection or law enforcement (as authorized by section 764 of the Code), nor does the bill charge that they threaten to do so.

(2) The allegations of the bill do not bring the case within any recognized field of preventive equity jurisdiction.—*Brown v. Birmingham,* 140 Ala. 590, 37 South. 173; *Old Dom. Telegraph Co. v. Powers,* 140 Ala. 220, 37 South. 195, 1 Ann. Cas. 119; *Board v. Orr,* 181 Ala. 308, 61 South. 920, 45 L. R. A. (N. S.) 575; *Port of Mobile v. L. & H. R. R. Co.,* 84 Ala. 115, 4 South. 106, 5 Am. St. Rep. 342; *Montgomery, etc., R. R. Co. v. Walton,* 14 Ala. 207. We hold, therefore, that the chancellor did not err in his denial of the application for a temporary injunction.

(3) If, on the other hand, it were sought to rest the prayer for relief upon injurious abuses committed by the respondents

[Walker v. John Smith, T.]

on complainant's cattle, by their negligent and incompetent administration of the laws and regulations for the eradication of the cattle tick in Morgan county—conceding, without deciding, that in such a case a court of chancery might interfere to prevent irreparable injury—we think it would not in any case do so unless it were made to appear that complainant had first applied to the state live stock sanitary board, and that that board, with notice of the alleged abuses, had refused or failed to intervene.

The order and decree appealed from will be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.