66 So.3d 204 (2010)
REDTOP MARKET, INC., and River Road Auto Repair, by and through its owner, Rickey BOLTON
v.
STATE of Alabama ex rel. Arthur GREEN, District Attorney for the Bessemer Division of the Tenth Judicial Circuit of Alabama.
1060855.
Supreme Court of Alabama.
December 30, 2010.
Jon B. Terry of Bains & Terry, Bessemer, for appellants.
Troy King, atty. gen., and Marc A. Starrett, asst. atty. gen., for appellee.
PER CURIAM.
Redtop Market, Inc., and River Road Auto Repair, by and through its owner, Rickey Bolton (hereinafter collectively referred to as "Redtop"), appeal from the trial court's order granting the State of Alabama on the relation of Arthur Green, district attorney for the Bessemer Division of the Tenth Judicial Circuit of Alabama, relief under Rule 60(b)(6), Ala. R. Civ. P. We vacate the order, dismiss the action, and dismiss the appeal.

Facts and Procedural History
On July 1, 2003, Redtop filed a complaint seeking a judgment declaring that certain gaming machines Redtop wished to operate in its place of business were "bona fide coin-operated amusement machines" under § 13A-12-76, Ala.Code 1975. According to the complaint, Green had refused to approve the gaming machines for use as amusement machines and had taken the position that the operation of the machines would violate §§ 13A-12-20 through 13A-12-76, Ala.Code 1975. The complaint alleged that "the machines in question are primarily games of skill and not chance and therefore, should be allowed to be operated."
After conducting a hearing, the trial court on February 3, 2004, entered an order holding that the gaming machines were bona fide coin-operated amusement machines under § 13A-12-76, Ala.Code 1975. The trial court's order stated that "any and all law enforcement agencies, including the Jefferson County Sheriff's Department and all local municipal law *205 enforcement authorities, [shall] abstain from seizing or charging criminally any individuals operating or possessing [the gaming machines] in Jefferson County."
On February 27, 2004, the State filed a motion for a new trial or a rehearing. After conducting a hearing, the trial court denied the motion for a new trial on July 1, 2005. On August 11, 2005, the State filed a notice of appeal to this Court. In State v. Redtop Market, Inc., 937 So.2d 1013 (Ala.2006), this Court held that the State's motion for a new trial had been denied by operation of law on May 27, 2004; thus, the State's appeal was untimely. Therefore, this Court dismissed the appeal.
On January 18, 2007, the State filed a motion under Rule 60(b)(6), Ala. R. Civ. P., seeking relief from the trial court's February 3, 2004, order. The Rule 60(b)(6) motion alleged that this Court in Barber v. Jefferson County Racing Ass'n, 960 So.2d 599 (Ala.2006), examined gaming machines that were essentially identical to the gaming machines at issue in the present case and held that such gaming machines are illegal gambling devices. The State asked the trial court to find that the gaming machines at issue in the present case are illegal gambling devices and to lift its injunction preventing law-enforcement agencies from seizing the machines or from criminally charging individuals found to be operating or possessing the machines in Jefferson County. On January 26, 2007, the trial court granted the State's motion and lifted the injunction.
On February 23, 2007, Redtop filed a motion to set aside the January 26, 2007, order or to stay that order pending appeal. The trial court denied that motion on February 26, 2007. On March 7, 2007, Redtop filed a notice of appeal to this Court.

Discussion
After the appeal in this case was taken, this Court released its opinion in Tyson v. Macon County Greyhound Park, Inc., 43 So.3d 587 (Ala.2010), which held that the Macon Circuit Court lacked subject-matter jurisdiction to interfere in the enforcement of criminal laws through the issuance of an injunction in a civil action. That holding is dispositive in the present case.
In Tyson, Macon County Greyhound Park, Inc., d/b/a VictoryLand ("Victory-Land"), filed an action in the Macon Circuit Court against John M. Tyson, Jr., individually and in his official capacity as special prosecutor and task-force commander of the Governor's Task Force on Illegal Gambling, seeking injunctive and declaratory relief stemming from Tyson's arrival at the premises of VictoryLand for the purpose of seizing machines that, Tyson said, were illegal gambling devices. In its complaint, VictoryLand asserted that its activities were lawful and that it would suffer irreparable injury if the machines were seized. The circuit court entered a written order barring Tyson from taking further action pending a hearing to be held a few days later. Tyson filed an emergency motion in this Court to stay or to vacate the circuit court's order.
This Court held that "[t]he general rule is that a court may not interfere with the enforcement of criminal laws through a civil action; instead, the party aggrieved by such enforcement shall make his case in the prosecution of the criminal action." Tyson, 43 So.3d at 589. We also noted that "[t]his Court has recognized an exception to the general rule whereby the equitable powers of the court can be invoked to avoid irreparable injury when the plaintiff contends that the statute at issue is void," 43 So.3d at 589, but we held that "[t]he complaint in this action does not present a situation in which the plaintiff acknowledges that his conduct is prohibited by a statute and then challenges the enforceability of the statute." 43 So.3d at 590. *206 Therefore, based on those propositions, we held that the circuit court lacked subject-matter jurisdiction, and we vacated the order before us, dismissed the action, and dismissed the appeal.
As did the plaintiffs in Tyson, Redtop sought a judgment declaring the operation of the gaming machines to be legal, and, like the trial court in Tyson, the trial court in this case, in its February 3, 2004, order, enjoined all law-enforcement agencies "from seizing or charging criminally any individuals operating or possessing [the gaming machines] in Jefferson County." Such a declaration would impermissibly interfere with the enforcement of criminal laws through a civil action. Also, no exception to the general rule applies in the present case because Redtop does not challenge the enforceability of any statute. Instead, Redtop alleges that the gaming machines are legal because, it says, the machines meet the definition of a "bona fide coin-operated amusement machines" under § 13A-12-76, Ala.Code 1975. Therefore, like the circuit court in Tyson, the circuit court in the present case lacked subject-matter jurisdiction over the action, and all orders entered by the trial court in this case are void.

Conclusion
Based on the foregoing, we vacate the order before us, dismiss the action, and dismiss the appeal.
ORDER VACATED; ACTION DISMISSED; APPEAL DISMISSED.
LYONS, WOODALL, STUART, SMITH, BOLIN, and SHAW, JJ., concur.
MURDOCK, J., concurs specially.
COBB, C.J., concurs in the result.
MURDOCK, Justice (concurring specially).
In Tyson v. Macon County Greyhound Park, Inc., 43 So.3d 587 (Ala.2010), this Court held that a circuit court exercising its civil jurisdiction did not have subject-matter jurisdiction over an action seeking to restrain the enforcement of this State's criminal laws. Among other things, this Court supported its holding with the following observations:
"The general rule is that a court may not interfere with the enforcement of criminal laws through a civil action; instead, the party aggrieved by such enforcement shall make his case in the prosecution of the criminal action:
"`It is a plain proposition of law that equity will not exert its powers merely to enjoin criminal or quasi criminal prosecutions, "though the consequences to the complainant of allowing the prosecutions to proceed may be ever so grievous and irreparable." Brown v. Birmingham, 140 Ala. [590,] 600, 37 South. [173,] 174 [(1904)]. "His remedy at law is plain, adequate, and complete by way of establishing and having his innocence adjudged in the criminal court." Id.'
"Board of Comm'rs of Mobile v. Orr, 181 Ala. 308, 318, 61 So. 920, 923 (1913). See also 22A Am.Jur.2d Declaratory Judgments § 57 (2003) (`A declaratory judgment will generally not be granted where its only effect would be to decide matters which properly should be decided in a criminal action.')."
Tyson, 43 So.3d at 589.
The present case well demonstrates the wisdom of the above-quoted general principles and the harmony of those principles with the doctrine of the separation of powers as provided in § 43 of the Alabama Constitution. If we limit "matters which properly should be decided in a criminal action" to criminal actions, a mistake in favor of a criminal actor serves only to *207 immunize from further law-enforcement efforts the specific past acts alleged in the indictment or information. On the other hand, if such a mistake is made in a civil case like the present one, the result could be injunctive or other relief that could tie the hands of law enforcement in the future so as, in effect, to immunize from further law-enforcement efforts all future acts of the same nature by the prevailing party and possibly other similarly situated actors in the county in which the decision is rendered. In practical effect, the result would be a change by civil judicial decree for that county of what has been prescribed by the legislature as the uniform statutory criminal law for the entire state. The judiciary would, in one fell swoop, be able to interfere with both the legislative and executive branches, contrary to § 43 of the Alabama Constitution.
Alabama's constitution prescribes to the legislative branch of our State government the task of promulgating criminal laws for the sake of the public's safety, health, and welfare. It prescribes to the executive branch of State government the task of enforcing criminal laws to the same end. It is essential to the integrity of the delegation of these respective tasks to these particular branches and to the realization of these purposes in a uniform manner throughout the various counties to adhere to the notion that an order from the judicial branch of the nature at issue in this case is subject to future, collateral attack as beyond the jurisdiction of the civil court that entered it. Maintaining this integrity and meeting these purposes dictate that the potential prospective, binding effect of the order of a single court not be dependent upon the immediate stance taken by, or the skill or diligence of, a local official in relation to the trying of a single civil action, the preserving of error in that action, or the pursuing of a timely and effective appeal from any adverse judgment.
Related to the foregoing, I note that our opinion in Tyson stated that this Court has recognized an exception to the general rule whereby the equitable powers of the court can be invoked to avoid irreparable injury when the plaintiff concedes that his or her conduct falls within a criminal statute but contends that the statute itself is void. 43 So.3d at 589. Because this exception is again referenced in the opinion in this case, I find it appropriate to make note here of questions regarding the correctness of this exception that have arisen for me since Tyson was decided.
Most fundamentally, it appears to me that the above-described principles and purposes could be defeated as effectively by a civil action that adjudicates a criminal statute or ordinance to be void as by a civil action that successfully seeks on some other ground to prevent particular conduct from being prosecuted under that criminal statute or ordinance in the future.[1] I question whether any exception that allows *208 such a result could be correct since it is those principles and purposes that inform the general rule.
Although there are indeed numerous cases that articulate an exception to the general rule for civil actions seeking an adjudication that an enactment is void (which I understand to be a reference to facial voidness), it may be observed that such cases, particularly early ones, usually involved the validity of local ordinances, rather than State criminal statutes. See, e.g., Board of Comm'rs of Mobile v. Orr, 181 Ala. 308, 318, 61 So. 920, 923 (1913) (noting the "plain proposition of law that equity will not exert its powers merely to enjoin criminal or quasi criminal prosecutions," but subsequently observing that the Court had recognized "the power ... of the equity courts to interfere by injunction where quasi criminal prosecutions under municipal ordinances will destroy or impair property rights" and citing a series of cases involving alleged violations of municipal ordinances (emphasis added)); Franklin Soc. Club v. Town of Phil Campbell, 204 Ala. 259, 85 So. 527 (1920); Walker v. City of Birmingham, 216 Ala. 206, 112 So. 823 (1927). Such cases arguably do not implicate the above-described concerns as to the separation and independence of the legislative and executive branches of State government, nor the need for statewide uniformity in the application of State criminal statutes, in the same manner as do cases seeking to adjudicate the viability of a criminal statute enacted by the legislative branch of State government for enforcement throughout the State.
Assuming that an exception of the nature expressed in Tyson is available, however, I also have come to question whether we as a Court failed in Tyson to observe adequately that the risk of irreparable injury that must be shown must be to property and enterprises other than those that are the subject of the enforcement action itself.[2] By extension, it may be questioned *209 whether in a circumstance where there is a commingling of both allegedly illegal enterprises with legal enterprises the complainant has not voluntarily undertaken a risk for which a court exercising civil jurisdiction may not provide relief.
While I therefore question whether this Court's articulation of an exception in Tyson was correct, it is not necessary to answer this "question" in order to decide the case before us. I agree with the main opinion that the exception articulated in Tyson is not applicable here, and I therefore concur in that opinion.
NOTES
[1] See generally City Council of Montgomery v. West, 146 Ala. 680, 40 So. 215, 215 (1906) (not reported in Alabama Reports) (holding that a court exercising civil jurisdiction is "without power to enjoin the commission of threatened crimes, or to restrain threatened prosecutions for the commission of alleged crimes," even when "the ordinance or statute for the alleged violation of which the prosecution is threatened, is absolutely void" and averment is made that there "would be repeated and numerous prosecutions" that would "inflict irreparable injury" but making no reference to any exception to this general rule). Similarly, if an ordinance purports to declare legal certain activity that would otherwise run afoul of a State criminal statute, I question whether there is any difference in adjudicating in a civil action for prospective effect the validity of that ordinance and a similar adjudication of the legality of the activity at issue in the absence of an ordinance that purports to legalize it.
[2] Compare, e.g., Bessemer v. Bessemer Water Works, 152 Ala. 391, 44 So. 663 (1907) (involving local ordinances imposing restrictions on businesses and property that in all other respects were "perfectly legitimate and highly useful"); Brown v. Birmingham, 140 Ala. 590, 37 So. 173 (1904); Old Dominion Tel. Co. v. Powers, 140 Ala. 220, 37 So. 195 (1904); Bryan v. City of Birmingham, 154 Ala. 447, 450, 45 So. 922, 923 (1908) (addressing on its merits the trial court's denial of equitable relief in a case where the "threatened enforcement of the ordinance would not only greatly diminish the value of the property, but will practically destroy its value, by forbidding the use to which it is better or exclusively adaptable," in this case a cemetery); Town of Cuba v. Mississippi Oil Co., 150 Ala. 259, 43 So. 706 (1907); Port of Mobile v. L. & N.R.R., 84 Ala. 115, 4 So. 106 (1888); Montgomery v. L. & N.R.R., 84 Ala. 127, 4 So. 626 (1888), with Ex parte State ex rel. Martin, 200 Ala. 15, 16, 75 So. 327, 328 (1917) ("The property right sought to be asserted ... does not ... bring [the plaintiff's] cause within the exception ... recognized in the cases noted in Board of Com'rs of Mobile v. Orr, 181 Ala. 308, 61 So. 920 [(1913)]. The fact, if so, that complainant has brought into the state or has in his possession a beverage that, though in fact not prohibited, will subject or has subjected him to arrest and his beverage to seizure, cannot avail to invest the court of equity with jurisdiction in the premises. The issue, whether the beverage is within the prohibitory laws, can be fully determined by the court in which the prosecution and the proceedings on seizure are heard."); Caudle v. Cotton, 234 Ala. 126, 127, 173 So. 847, 848 (1937) (dissolving an injunction against law enforcement's seizure of gambling devices and noting that "[p]erhaps the case of Ex parte State, 200 Ala. 15, 75 So. 327 [(1917)], furnishes an illustration more nearly in point to the instant case" than others); Kennedy v. Shamblin, 234 Ala. 230, 231, 174 So. 773, 774 (1937) (affirming the trial court's denial of equitable relief where "the only property rights involved are such as the complainant has in said slot machines, in which he has invested his money and the profits which said machines are taking"). See also Dickey v. Signal Peak Enters., 340 Ark. 276, 280, 9 S.W.3d 517, 519 (2000) (holding that a threatened prosecution did not fall within the exception to the general preventing a chancery court from restraining prosecutorial efforts because the threatened prosecution "was aimed exclusively at illegal gambling operations, not lawful business operations"); Billy/Dot, Inc. v. Fields, 322 Ark. 272, 908 S.W.2d 335 (1995).