SHAW, Justice
(dissenting).
I respectfully dissent to withdrawing this Court’s original opinion and dismissing these appeals on rehearing ex mero motu. In our original opinion in this case, this Court unanimously held that the definition of “bingo” in Ordinance No. 2008-0011 (“the ordinance”) failed to comply with applicable law and that the ordinance was therefore unconstitutional. Specifically, we held that the definition of bingo in the ordinance impermissibly deviated from that definition of bingo found in Barber v. Cornerstone Community Outreach, Inc., 42 So.3d 65 (Ala.2009).[2] Subsequently, this Court, ex mero motu and before the issuance of certificates of judgment in these appeals, placed these appeals on rehearing and ordered briefs addressing whether the trial court, in light of this Court’s decision in Tyson v. Macon County Greyhound Park, Inc., 43 So.3d 587 (Ala.2010), had subject-matter jurisdiction over the claims of the parties. Concluding that the trial court lacks jurisdiction for reasons unrelated to Tyson, the majority *95 withdraws the Court’s original opinion and now holds that the declaratory-judgment action in this case presents an impermissible request for an advisory opinion. I respectfully disagree.

I.

It is correct that some portions of the action below sought a declaration as to the legality of certain future conduct, namely, the operation of certain gaming machines and facilities pursuant to the ordinance. That conduct had not yet occurred. Such actions are not maintainable. Specifically, in Baldwin County v. Bay Minette, 854 So.2d 42 (Ala.2003), this Court held that a declaratory-judgment action was nonjusti-ciable because it sought a declaration regarding an anticipated factual scenario:
“The County does not describe an existing dispute that is ‘definite and concrete,’ or ‘real and substantial.’ Copeland v. Jefferson County, 284 Ala. [558,] 561, 226 So.2d [385,] 387 [ (1969) ]. Nowhere does the County allege that this, or any similar, scenario has, in fact, occurred. It merely argues that such a scenario could occur. It does not involve a dispute with any permitee [sic] who would be affected by conflicting regulations. In other words, the County alleges nothing more than an ‘anticipated controversy,’ for which ‘[declaratory judgment proceedings will not lie.’ Creola Land Dev.[, Inc. v. Bentbrooke Hous., L.L.C.,] 828 So.2d [285,] 288 [ (Ala.2002) ].”
854 So.2d at 46.[3]
However, I disagree with the conclusion that all the claims at issue in the underlying case involve anticipated conduct.[4] First, there appears to be no dispute that, under the plain language of the Declaratory Judgment Act, Ala.Code 1975, § 6-6-220 et seq., a municipality may test the validity of an ordinance through a declaratory-judgment action: “[a]ny person ... whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.” Ala. Code 1975, § 6-6-223 (emphasis added).[5] See, e.g., City of Piedmont v. Evans, 642 So.2d 435 (Ala.1994); Barber v. Fields, 624 So.2d 532 (Ala.1993).
Second, the dispute in this case is whether the ordinance is constitutional on its face, not whether some future conduct or factual scenario is valid or legal. The ordinance was enacted and is currently in effect and operation; it is not merely proposed. The City has begun operating its regulatory scheme put in place by the ordinance, and entities have actually applied for the permits authorized by the ordinance. Sheriff Surles and District Attorney Minor contend that the ordinance is unconstitutional.
I see no factual development that needs to unfold in order to make ripe for review the simple determination whether the ordinance complies with Alabama law. Indeed, the issue originally addressed by this Court was not whether any future conduct *96 pursuant to the ordinance violated Alabama law,[6] the issue was whether the ordinance, as written, complies with Alabama law. This is a pure question of law for the answer to which we compare the text of the ordinance against our body of statutory law, constitutional law, and caselaw. This is illustrated in our previous decision in a virtually identical action: City of Piedmont v. Evans, 642 So.2d 435 (Ala.1994). In that case, the City of Piedmont (“Piedmont”) filed a declaratory-judgment action against the local district attorney seeking a judgment declaring whether an ordinance enacted by Piedmont, which purported to allow bingo gaming, was constitutional. This Court affirmed the trial court’s judgment declaring that the definition of “bingo” in Piedmont’s ordinance unconstitutionally provided for an illegal lottery. 642 So.2d at 437. The actual conduct occurring pursuant to the ordinance was not material to the analysis. Indeed, certain conduct discussed in that case did not comply with the ordinance; nevertheless, the ordinance was held unconstitutional on its face.
Whether American Legion, Post 170, and Shooting Star Entertainment Group, LLC, operate machines as described in the ordinance, which we originally held would be impermissible, or whether they operate games that strictly comply with the description of bingo found in Barber would not be determinative as to whether the ordinance is lawful, would not create more adversity between the parties, and would not solidify the bounds and extent of the controversy, because their conduct is immaterial. Further, such conduct would not convert an examination of the legality of the ordinance from an “abstract proposition” to a “real and substantial” controversy, because the controversy in this case is whether the ordinance complies with the law. This controversy came into being when the ordinance was enacted. See, e.g., Tobe v. City of Santa Ana, 9 Cal.4th 1069, 1084, 40 Cal.Rptr.2d 402, 892 P.2d 1145, 1152 (1995) (“A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual.”). I thus see no need for conduct pursuant to the ordinance to occur in order to create a “realized controversy”; such facts are not material.
This conclusion is demonstrated in Chorba-Lee Scholarship Fund, Inc. v. Hale, 60 So.3d 279 (Ala.2010). In Chorbar-Lee, several nonprofit charities operating bingo-gaming establishments in Jefferson County filed an action seeking a declaration as to the validity of certain newly issued bingo-gaming regulations promulgated by the Jefferson County sheriff. Specifically, the charities argued that Ala. Const. 1901, Amendment No. 386 (now Local Amendments to Ala. Const. 1901, Jefferson County, § 2 (Off.Recomp.)), gave regulatory power over bingo gaming exclusively to local municipalities or the county. Certain local acts[7] purporting to provide such regulatory power to the sheriff, they argued, were in conflict with Amendment No. 386 and were thus unconstitutional.
It is unclear whether the charities operated their gaming facilities after the sher *97 iff s regulations went into effect; in fact, the charities did not acquire permits from the sheriff, arguing that they did not have to do so “so long as they [we]re operating under a license or permit issued by a municipality that ha[d] enacted a bingo ordinance.” 60 So.3d at 284. In any event, whether bingo gaming was being conducted was of no consequence to our analysis whether the regulations promulgated by the sheriff violated Amendment No. 386. Instead, this Court’s analysis simply focused on whether the regulatory activity complied with applicable law.
No different analysis is required in the instant case. Here, as in Chorbar-Lee, the issue is whether the attempts to regulate bingo gaming comply with the local constitutional amendments authorizing such regulation. Whether bingo gaming is actually being conducted adds nothing to the analysis. Stated differently, Chorba-Lee demonstrates that, in the underlying declaratory-judgment action in the instant case, no conduct is necessary to aid in determining the constitutionality of the ordinance.

II.

Further, I see here no jurisdictional bars like those found in Tyson v. Macon County Greyhound Park, Inc., 43 So.3d 587 (Ala.2010) (“Tyson ”). In Tyson, Macon County Greyhound Park, Inc., d/b/a Victo-ryLand (“VictoryLand”), commenced an action in the Macon Circuit Court against John M. Tyson, Jr., individually and in his official capacity as special prosecutor and commander of the Governor’s Task Force on Illegal Gaming, seeking injunctive and declaratory relief. Specifically, Victory-Land sought a declaration that certain gaming machines at its facility were legal, as well as an injunction preventing Tyson from seizing them. Tyson contended that the Macon Circuit Court did not have subject-matter jurisdiction over a civil action seeking to enjoin the enforcement of the criminal laws of the State. This Court stated on appeal:
“The general rule is that a court may not interfere with the enforcement of criminal laws through a civil action; instead, the party aggrieved by such enforcement shall make his case in the prosecution of the criminal action:
“ ‘It is a plain proposition of law that equity will not exert its powers merely to enjoin criminal or quasi criminal prosecutions, “though the consequences to the complainant of allowing the prosecutions to proceed may be ever so grievous and irreparable.” Brown v. Birmingham, 140 Ala. [590,] 600, 37 South. [173,] 174 [(1904)]. “His remedy at law is plain, adequate, and complete by way of establishing and having his innocence adjudged in the criminal court.” Id.’
“Board of Comm’rs of Mobile v. Orr, 181 Ala. 308, 318, 61 So. 920, 923 (1913). See also 22A Am.Jur.2d Declaratory Judgments § 57 (2003) (‘A declaratory judgment will generally not be granted where its only effect would be to decide matters which properly should be decided in a criminal action.’).
“ ‘The general rule that courts of equitable jurisdiction will not enjoin criminal proceedings or prosecutions applies ... to prosecutions which are merely threatened or anticipated as well as to those which have already been commenced. The rule extends to ... searches and seizures in the course of investigation of crime....
“ ‘It is not a ground for injunctive relief that the prosecuting officer has erroneously construed the statute on which the prosecution is based so as to include the act or acts which it is *98 the purpose of the prosecution to punish....
‘“If the statute, or interpretation thereof, on which the prosecution is based is valid, the fact that the enforcement thereof would materially injure the complainant’s business or property constitutes no ground for equitable interference, and is not sufficient reason for asking a court of equity to ascertain in advance whether the business as conducted is in violation of a penal statute....’
“43A C.J.S. Injunctions § 280 (2004) (footnote omitted).”
Tyson, 43 So.3d at 589.
Tyson further recognized the danger of “a court exercising equitable jurisdiction ... interfer[ing] with the orderly functioning of the executive branch within its zone of discretion in violation of the separation-of-powers doctrine set forth at § 43 of the Alabama Constitution of 1901....” 43
So.3d at 589-90. We held in Tyson:
“The complaint in this action does not present a situation in which the plaintiff acknowledges that his conduct is prohibited by a statute and then challenges the enforceability of the statute. To the contrary, VictoryLand strenuously maintains its innocence. Entertainment of a civil action for injunctive and declaratory relief under such circumstance cannot be countenanced lest the trial court become involved in a role that should be left to the fact-finder in a criminal proceeding following a plea of not guilty.”
43 So.3d at 590.
Thus, in Tyson, the target of a possible criminal probe filed a declaratory-judgment action seeking a determination as to whether its conduct was legal, and the relief requested sought to interfere with the executive branch’s exercise of its discretion in enforcing the law. Such action, we held, ran afoul of several well established legal principles: that equity generally will not enjoin criminal or quasi-criminal prosecutions; that a declaratory-judgment action will not be entertained for the purpose of deciding matters that should properly be decided in a criminal action; and that the separation-of-powers doctrine of Ala. Const. 1901, § 43, bars a court from interfering with the orderly functioning of the executive branch operating within its zone of discretion.
Certain aspects of the declaratory-judgment action below are clearly impermissible under Tyson. Specifically, the City, Surles, and Minor all attempted to seek a judgment declaring whether anticipated conduct — the operation of electronic machine bingo — would be lawful. The City went even further and sought injunctive relief preventing law enforcement from exercising its discretionary law-enforcement function. This is precisely the type of judicial action this Court in Tyson recognized as impermissible; it is not within the trial court’s power to entertain such claims.
That said, the City, Surles, and Minor all also sought a judgment declaring whether the City’s ordinance falls within the limited grant of authority provided by Amendment No. 542, Ala. Const. 1901 (now Local Amendments to Ala. Const. 1901, St. Clair County, § 2 (Off.Recomp)); Act. No. 91-710; and Act No. 93-687, to enact a regulatory scheme governing bingo in St. Clair County. These claims are the only claims we addressed in our original opinion in these appeals; this Court was presented a pure question of law that raises none of the concerns expressed in Tyson. Specifically, such a declaration does not involve a determination as to whether certain conduct by the parties would violate the criminal law. Indeed, the facts of this case reveal no allegedly illegal conduct taking place, and no criminal law is at *99 issue. Further, such a determination, alone, does not involve the trial court’s using equitable powers to enjoin criminal or quasi-criminal prosecutions. Although the City sought such injunctive relief as one of the many claims presented in this matter, the trial court, under Tyson, does not possess the power to limit law enforcement in such fashion. Thus, these two concerns expressed in Tyson have no application in this case.
Finally, an action under the Declaratory Judgment Act to determine whether the regulatory scheme of the ordinance falls within the authority granted by Amendment No. 542, Act No. 91-710, and Act No. 93-687 to regulate bingo does not ab initio interfere with the discretion afforded the executive branch in enforcing criminal laws. The decision this Court reached in its original opinion — that the ordinance is unconstitutional and that the trial court erred in holding otherwise — did not operate to restrict executive-branch discretion in conflict with § 43. Whether any declaratory-judgment action addressing the constitutionality or legality of an ordinance could in the future operate to restrict executive-branch discretion — or whether § 43 would bar such future restriction — was not an issue in our original decision.

III.

I see no jurisdictional barrier to this Court’s original decision in this matter; therefore, I respectfully dissent from withdrawing the original opinion and dismissing these appeals.
BOLIN, J., concurs.

. We held that the definition of bingo in the ordinance deviated from the definition of bingo in Barber because "electronic bingo gaming,” which the ordinance authorized, was not "bingo.” We stated: "[The ordinance's] definition of 'machine bingo game’ indicates that player participation and interaction will actually be performed by a machine.... This is not the game of bingo.... ”

.Additionally, actions seeking a judgment declaring whether certain conduct violates criminal laws, we have recently noted, are impermissible. See Tyson v. Macon County Greyhound Park, Inc., supra, discussed in Part II, infra.

. In fact, as discussed below, this Court in our original opinion did not address such anticipated conduct.

. The word ‘‘person” under this Code section includes a municipality. Ala.Code 1975, § 6-6-220.

. Sheriff Surles and District Attorney Minor contended that such future conduct would be illegal, but this Court’s original opinion, noting that no actual bingo machines had yet been installed or operated, i.e., that such conduct was merely anticipated, did not address the propriety of any actual machine or gaming activity.

. Act No. 80-609, Ala. Acts 1980, as amended by Act No. 94-393, Ala. Acts 1994, and later by Act No. 99-415, Ala. Acts 1999.